722 So.2d 344 (1998)
William E. EDWARDS, Jr., Plaintiff-Appellant,
v.
FISCHBACH & MOORE, INC., Defendant-Appellee.
No. 31,372-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*345 William E. Edwards, Jr., Appellant, in Proper Person.
Degan, Blanchard & Nash by Foster P. Nash, III, New Orleans, Counsel for Appellee.
Before NORRIS, CARAWAY and PEATROSS, JJ.
PEATROSS, J.
Plaintiff, William E. Edwards, Jr. ("Edwards"), filed a disputed claim form with the Office of Workers' Compensation on May 13, 1996, seeking payment of benefits and medical expenses related to alleged mental and physical work-related injuries. Edwards alleged his injuries resulted from the job stress he experienced while he was employed with Defendant, Fischbach & Moore, Inc. (F & M). The Workers' Compensation Judge (WCJ) found that, although Edwards appeared to be suffering from stress-induced injuries, those injuries did not fall within the ambit of statutorily compensable injuries and dismissed his claim. Edwards has appealed. F & M has answered the appeal seeking affirmation of the WCJ's judgment. For the reasons stated herein, we affirm.

FACTS
Edwards was hired by F & M to replace the current project manager for Lock and Dam Nos. 4 and 5 of the Red River Navigation Project in Shreveport ("Locks and Dams Project"). He was also assigned as the new project manager of the Austin Diagnostic Clinic ("Austin Project") in Austin, Texas, and as a project engineer for the Dallas Veterans Administration Hospital.
Near the end of July 1995, several problems appeared at the same time with both the Locks and Dams Project and the Austin Project. A switch gear for the Austin Project had blown out in May 1995, and a replacement gear finally arrived and had to be installed at the same time the Locks and Dams Project was coming to completion. It was Edwards' intention to replace the switch gear over the weekend after he completed the punch lists for the Locks and Dams Project during the week. Prior to the weekend, however, Edwards was ordered by the Director of the Austin Diagnostic Clinic to replace the switch gear. This created a time bind for Edwards, resulting in his working 27 hours straight between July 27 and 28. He was then summoned to Shreveport during the day of July 28, 1995, to handle additional problems with the Locks and Dams Project. Unable to get an airline flight, Edwards drove the five hours from Austin to Shreveport where he went immediately to the Locks and Dams Project and was not able to rest until later that night.
He spent the next two days working long hours attempting to solve the various problems at the Locks and Dams Project. On July 31, 1995, Edwards awoke at 2:00 a.m. to return to Austin. During the drive, Edwards began to experience tightness in his chest, tingling in his left arm and nausea. Believing he was having a heart attack, Edwards *346 went straight to the emergency room of Austin Diagnostic Clinic when he arrived in Austin.
Edwards underwent a myriad of tests. His symptoms were diagnosed as stress related, as opposed to cardiac problems. Edwards was released with a recommendation to take a vacation and avoid stress for the next two weeks.
On August 7, 1995, after returning to Shreveport, Edwards went to Schumpert Medical Center where he was treated by Dr. Masters, a cardiologist.[1] Cardiac involvement was completely ruled out and Edwards was referred to a gastroenterologist and a neuropsychiatrist. It was eventually determined that Edwards was suffering from gastrointestinal disorders, including reflux esophagitis; acute stress disorder; and panic disorder; all of which contributed to his chest pain and tightness and other false cardiac symptoms.
The neuropsychiatrist related Edwards' stress and panic disorders directly to his employment. Edwards initially filed suit against F & M and AIG Claims Services, Inc. ("AIG"). F & M and National Union Fire Insurance Co. ("National") answered, admitting that F & M was Edwards' employer but denying that AIG was the liability carrier. Edwards amended the petition to exclude AIG and add National as the liability carrier.
Trial of the matter was heard August 26 and 27, 1997. Additional medical evidence was provided to the WCJ on October 1, 1997; and oral reasons for judgment were given October 28, 1997, dismissing Edwards' claim with prejudice.

DISCUSSION

Mental/Mental Injury
We will first address the issue of Edwards' mental/mental injury or mental injury caused by mental, as opposed to physical, stress. La. R.S. 23:1021(7)(b) states:
Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. (Emphasis added.)
The mental injury must be precipitated by an accident, an unexpected and unforseen event that occurs suddenly or violently. Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138 (La.1989). The mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to justify compensation. Sparks, supra; Cressionnie v. Fisk Electric, 93-931 (La.App. 5th Cir.2/14/96), 671 So.2d 3. Absent an identifiable accident, general allegations of inability to work due to stress or tension caused by working conditions would not give rise to a compensable claim. Id.
Further, such a showing must be by clear and convincing evidence. The "clear and convincing" standard requires a demonstration that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Renter v. Willis-Knighton Medical Center, 28,589 (La.App.2d Cir.8/23/96), 679 So.2d 603; Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456.
We review the findings of fact by a WCJ under the "manifest error" standard. Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94), 635 So.2d 166. The issue is not whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/01/95), 663 So.2d 543.
*347 The WCJ stated in her reasons for judgment that the week of extreme work conditions, which Edwards described as precipitating his panic attack, did not present a particular incident. We find that the record supports this factual conclusion. Edwards testified that at the time of his panic attack he was driving to Austin from Shreveport. Although Edwards was driving at a very early hour of the morning, there was no sudden or unexpected event or incident which precipitated the panic attack, nor was the hour necessarily unusual for his profession.
We must also determine if the overall stress of which Edwards complained was extraordinary in nature. This must be determined by whether an ordinary reasonable person of usual sensibilities would find the stress "extraordinary," not from the point of view of the claimant. Renter, supra; Bass v. Farmer & Cheatham, 94 1281 (La.App. 1st Cir.6/30/95), 658 So.2d 324, writ denied, 95-2289 (La.12/8/95), 664 So.2d 423; Bryant v. Giani Investment Co., 626 So.2d 390 (La. App. 4th Cir.1993), writ denied, 94-0089 (La.3/18/94), 634 So.2d 852; Cressionnie, supra.
The WCJ stated that, although the hours Edwards worked might seem extraordinary to a lay person, they were not unusual for a project manager. Again, this conclusion is supported by the record. Both Edwards and his superior, Bill Norris, testified that the hours which Edwards worked and the deadlines imposed were a common part of the construction industry. Edwards testified that he was aware of the hours he would have to work and the deadlines imposed before he was hired by F & M.[2] Bill Norris further testified that, because he took over Edwards' duties when Edwards became ill, he was presented with the same amount of stress, if not more. We find, therefore, that Edwards did not suffer a compensable mental injury as defined by La. R.S. 23:2021(7)(b).

Mental/Physical Injury
We next address the issue of Edwards' mental/physical injuries, i.e., physical injuries or illnesses caused by mental stress. Edwards contends that his gastrointestinal problems resulted from the undue stress which he was under in performing his job. We find no support for this argument in the record.
Edwards was referred to Dr. David Scott, a gastroenterologist, by either Dr. Allums or Dr. Masters, after cardiac involvement was ruled out concerning Edwards' chest pain.[3] Dr. Scott treated Edwards from August 31, 1995, until July 1996, and diagnosed Edwards with reflux esophagitis.
Dr. Scott stated in his deposition that reflux esophagitis, which is caused by an overproduction of acid in the stomach, was likely the cause of Edwards' chest pain. Dr. Scott also explained that reflux esophagitis is not caused by stress, but instead by specific hormones which control the production of stomach acid and an excess of these hormones may produce excess acid. It was the opinion of Dr. Scott that Edwards' condition did not prevent him from working.
Edwards' other gastrointestinal ailments were not as precisely diagnosed. Dr. Scott did state, however, that these ailments also were not caused by stress. The diarrhea, rectal bleeding, cramping and stomach tenderness were thought to be either a mild case of Crohn's disease or irritable bowel syndrome. The colonoscopy and ilium biopsies which Dr. Scott performed on Edwards, however, were inconclusive. Dr. Scott referred Edwards to a colleague in Dallas, Dr. Pulter, for a second opinion because Dr. Scott was concerned that Edwards' symptoms were out of proportion with Dr. Scott's physical findings. Dr. Pulter also performed a colonoscopy with the same result.
Dr. Scott stated in his deposition that neither Crohn's disease nor irritable bowel syndrome *348 are caused or aggravated by stress. In fact, when Edwards was first presented to him for treatment, his symptoms were wholly unrelated to either Crohn's disease or irritable bowel syndrome. Edwards' only complaints were of chest tightness and burning and rectal bleeding. The chest tightness and burning were found to be caused by the reflux esophagitis and the rectal bleeding was consistent with hemorrhoids, which Dr. Scott found Edwards to have.
Dr. Scott testified that the symptoms suffered by Edwards were not ones that would prevent him from working. We find, therefore, that Edwards failed to carry his burden of proving that his gastrointestinal ailments were either work-related or prevented him from working and are, therefore, not compensable.[4]
Finally, we address Edwards' heart attack which he suffered approximately ten months after the panic episode in July 1995. Aside from the attenuated time frame, Edwards was plagued with many other risk factors which his physicians noted. He had been a heavy smoker; he suffered from both high cholesterol and high blood pressure; and he was morbidly obese, weighing close to 300 pounds. We find, therefore, that Edwards failed to carry his burden of proving that his heart attack was caused by job stress some ten months prior.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed to Plaintiff.
AFFIRMED.
NOTES
[1] Dr. Masters noted in Edwards' chart that he suffered from both high cholesterol and high blood pressure, was morbidly obese, weighing close to 300 pounds, and had a history of being a heavy smoker.
[2] Edwards was aware at the time of his interview that it was usual and customary to work seven days a week and 12 to 14 hours a day. He was aware in May 1995 of his increased workload with additional projects and that he would have to do "whatever it took to get the job done."
[3] Dr. Scott could not recall which cardiologist referred Edwards to him.
[4] The gastrointestinal ailments also cannot be considered as an occupational disease. Edwards had not worked the necessary 12-month period to qualify for the statutory presumption of an occupational disease, nor did he present any evidence to prove that those ailments could have developed prior to the 12-month period. See La. R.S. 23:1021.