821 So.2d 730 (2002)
Bertha HANKTON
v.
CITY OF NEW ORLEANS (Department of Public Works & Parking).
No. 2001-CA-0714.
Court of Appeal of Louisiana, Fourth Circuit.
June 19, 2002.
*731 Joseph G. Albe, Ben E. Clayton, Metairie, LA, Counsel for Plaintiff/Appellee.
Wayne J. Fontana, John M. Daves, Courtenay, Forstall, Hunter & Fontana, Texaco, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.).
*732 Judge PATRICIA RIVET MURRAY.
The City of New Orleans appeals suspensively from the decision of the workers' compensation court holding that claimant Bertha Hankton is entitled to receive temporary total disability and medical benefits for a work-related mental injury sustained by her while she was employed by the City in the Department of Public Works and Parking. Ms. Hankton answers the appeal seeking a reversal of those portions of the judgment denying her additional compensation for a work-related physical injury claimed by her, and declining to award her penalties or attorney fees. For the reasons that follow, we reverse the judgment of the workers' compensation court insofar as it finds Ms. Hankton entitled to compensation for mental injury, and affirm the judgment in all other respects.

FACTS
Bertha Hankton began working for the City as a parking ticket writer in 1975. In 1981, she was promoted to Parking Supervisor I, in which position she supervised field personnel who went out and ticketed illegally parked vehicles. In 1996, she was promoted to the classification of Parking Supervisor II. Shortly thereafter, new management in the department changed her job to that of training coordinator, a newly-created position which consisted of training parking ticket writers. After a few months in that position, Ms. Hankton's supervisor suggested she become a complaint officer, which she did. In April 1998, however, Ms. Hankton was transferred to field supervisor in the abandoned vehicles unit. On April 29, she attended a meeting at which each supervisor was given a written memorandum outlining the procedures to be followed in the abandoned vehicles section. About three weeks later, Ms. Hankton attended a follow-up meeting where she expressed discomfort and a lack of understanding as to what was expected of her and asked for guidance. As a result, a Parking Operations Analyst was sent to meet with Ms. Hankton individually and discuss her concerns. On June 30, 1998, another followup meeting was held, at which Ms. Hankton asked how she should handle a specific situation regarding overtime pay for a certain employee, LaShay Johnson, who worked primarily in Ms. Hankton's section but also served as a backup in other sections. Ms. Hankton was instructed to write Ms. Johnson a memo informing her of the procedures she should follow in the future to properly document her overtime. Instead, Ms. Hankton sent Ms. Johnson a memo the same day telling her that she could not be compensated for a prior Saturday that she had worked because she did not have a time card to verify her presence.
On July 15,1998, Ms. Hankton met with Ms. Rhonda Thompson, who was her immediate supervisor, and Ms. Lynn Simon, the Deputy Parking Administrator. During this meeting Ms. Hankton was handed a memorandum dated July 7, 1998, addressed to her from Ms. Simon. The memorandum acknowledged that Ms. Hankton had expressed confusion about her job description, but also noted that, in her meeting with the Parking Operations Analyst, she had not indicated any specific areas in which she needed further clarification of her responsibilities. It further noted that Ms. Hankton was not taking responsibility for the completion of work orders to remove abandoned vehicles. The memorandum concluded, in pertinent part:
Given the caliber of job performance thus far, we have developed serious concern as to your ability to handle this position. Moreover, your memo dated June 30, 1998 to LaShay Johnson (see attached) creates even further cause for *733 concern relative to your supervisory skills and decision making ability.
As a Parking Supervisor II with extensive supervisory experience, it would seem that you would fully realize we cannot refuse to pay someone (as implied by the memo) for work that was performed, especially when they have not been warned in writing of such a possibility if they do not follow procedures....
* * * * *
Given your overall job performance during the past (9) nine weeks, and most especially your lack of sound judgement in the situation concerning Ms. Johnson, I believe discipline is necessary. Therefore, you are being suspended for (1) day, next Thursday, July 16, 1998.
The memorandum also informed Ms. Hankton of her right to appeal the one-day suspension to the Civil Service Commission. Ms. Hankton became very upset at this meeting and was outraged by her suspension. She went on sick leave the day following her suspension. On July 20, she saw Dr. Theresa Adderley, complaining of headaches, chest pains, heart palpitations and elevated blood pressure, which symptoms Ms. Hankton said began right after she learned of her suspension. Ms. Hankton also saw a psychologist, Dr. Yvonne Osborne, in July, who treated her for depression, accompanied by feelings of rage and hostility over the fact that she had been suspended after 23 years on the job without any prior problems. Dr. Osborne opined that Ms. Hankton was too depressed to work. On July 24, 1998, Ms. Hankton applied for medical leave claiming she suffered from work-related stress and was granted leave. She remained on sick leave and then was placed on medical leave without pay in June, 1999. At some point she stopped seeing Dr. Osborne, to whom she had been referred by the City, and began seeing Dr. Kevin Jackson for the treatment of her depression. She also continued to see Dr. Stallworth for back and leg pain. Ms. Hankton had injured her back in two prior automobile accidents while driving City vans, one in 1980 and one in 1990. She claimed this condition worsened and she began having shooting pains down her right leg about one month prior to her suspension, when she had to stretch her leg to reach the pedals of the vehicle the City had assigned to her for her job in the abandoned vehicles section.
Ms. Hankton appealed her suspension to the Civil Service Commission, which rendered a decision on June 9, 1999, upholding the suspension. She also filed the instant claim for worker's compensation. She claimed physical disability due to her leg pain and aggravation of her preexisting back condition, and mental disability due to her depression. In relation to the filing of her claim, Ms. Hankton was seen by three additional doctors at the request of the City: Dr. Mimeles (an orthopedist), Dr. Colomb (a psychiatrist) and Dr. Barber.
Ms. Hankton's claim was tried to the hearing officer on April 27, 2000, and June 16, 2000. Witnesses included Ms. Hankton, Ms. Simon, Mr. Robert Miller (the head administrator of the Parking division) and Ms. Bonin, a claims adjuster for the City's workers' compensation carrier. The deposition testimony of Dr. Colomb was submitted, as were written records and reports of all the other physicians. On October 2, 2000, the court rendered judgment finding that the claimant had proved by clear and convincing evidence that she had sustained a compensable mental injury on July 15, 1998, when she was reprimanded and given a one-day suspension, and that she was, therefore, entitled to temporary total disability benefits and related medical benefits beginning on that date *734 and continuing until such time as she is released by her treating psychologist to return to work. Additionally, the court found that Ms. Hankton had failed to prove that she had sustained a compensable physical injury while operating a City vehicle in 1998, and further, that the City had not acted arbitrarily or capriciously by failing to pay benefits while it disputed the claim.
On appeal, the City argues that the OWC erred by finding that Ms. Hankton's mental injury was the result of "a sudden, unexpected, and extraordinary stress" related to her employment such as would entitle her to benefits under the Louisiana Workers' Compensation Act, La. R.S. § 23:1021 et seq. Answering the appeal, Ms. Hankton seeks reversal of those portions of the OWC's judgment holding that she did not sustain a compensable physical injury and that the City did not act arbitrarily or capriciously in disputing her claim.

STANDARD OF REVIEW
A workers' compensation case is subject to the "manifest errorclearly wrong" standard, which precludes the appellate court from setting aside findings of fact unless they are clearly wrong in light of the record reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (:La.1/14/94), 630 So.2d 706,710.

THE CITY'S ASSIGNMENT OF ERROR
The City contends the workers' compensation court was clearly wrong in finding that the claimant's mental injury was compensable. Ms. Hankton's entitlement to benefits for what the jurisprudence has termed a "mental/mental" injury is governed by La. R.S. § 23: 1021(7)(b), which reads:
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. (Emphasis added.)
Generally, for a claimant to be entitled to benefits under this provision, the mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently. Favorite v. Louisiana Health Care Authority, 98-721, p. 4 (La.App. 5 Cir. 12/16/98), 725 So.2d 556, 558 (citing Sparks v. Tulane Med. Center Hosp. & Clinic, 546 So.2d 138 (La.1989).) Therefore, a mere showing that the claimant's mental condition is related to general conditions of employment, or to incidents occurring over an extended period of time, is insufficient to justify compensation under the Act. Id.; Edwards v. Ficshbach & Moore, Inc., 31,372 (La. App. 2 Cir. 12/9/98), 722 So.2d 344. Moreover, Louisiana courts have uniformly held that an objective test (rather than merely the subjective viewpoint of the claimant) is used to determine whether the stress that triggers a mental injury is "extraordinary;" thus, it must be stress that would be considered "sudden, unexpected and extraordinary" by a reasonable person of usual sensibilities. See, e.g.: Tranchant v. Environmental Monitoring Service, Inc., 00-1160 (La.App. 5 Cir. 12/13/00), 777 So.2d 516; Edwards v. Fischbach & Moore, Inc., supra; Aucoin v. Dow Chemical Co., 98-1912 (La.App. 1 Cir. 9/24/99), 745 So.2d 682.
Ms. Hankton contended that the meeting at which she was reprimanded and then handed the letter informing her of her suspension constituted "sudden, unexpected and extraordinary" stress because *735 it was the very first time she was given any indication that her employer was not satisfied with her job performance. The testimony confirmed that Ms. Hankton became very upset when she was told of the suspension, but there was no yelling or profanity used at the meeting. Ms. Hankton also admitted that her memorandum to LaShay Johnson was a mistake, but claimed that she had simply failed to proofread it.
The City refuted Ms. Hankton's contention that the disciplinary action was sudden and unexpected by presenting testimony from Ms. Simon that Ms. Hankton had complained that she did not understand the written procedures she was given to follow in April, but then had declined to name any specific concerns when she was assigned an analyst to help her. The City also presented evidence that Ms. Hankton was moved from two prior positions (training coordinator and complaint officer) into the abandoned vehicles section because, at least from the employer's perspective, she had difficulty meeting the expectations of her supervisors in those jobs. On appeal, the City also relies on Ms. Hankton's own testimony that ever since the new management had taken over at the Department, she had felt that she was always under stress, which she attributed to being in a new situation, not knowing what to do, and not feeling as if she could ask questions of her supervisors. Based on this testimony, the City argues that not only was the stress experienced by Ms. Hankton subjective, it clearly had developed over a period of time and, therefore, cannot be considered "sudden" or "extraordinary" from an objective standpoint.
Recently, in Partin v. Merchant & Farmers Bank, XXXX-XXXX (La.3/11/02), 810 So.2d 1118, the Louisiana Supreme Court confirmed that an objective standard must be applied to determine whether the mental stress suffered by the claimant meets the criteria established by La. R.S. § 23: 1021(7)(b) for a compensable injury. In that case, the plaintiff, Ms. Partin, claimed she suffered a compensable mental injury when her employer, a bank, demoted her for lack of managerial skills after eighteen years of employment. Id., p.l, 810 So.2d at 1119. Ms. Partin had been promoted numerous times over the years, from bookkeeper to teller to various supervisory positions, and eventually, to branch officer. She testified that she had never been reprimanded or told that her managerial skills were unsatisfactory. However, while conducting a surprise audit, Ms. Partin had discovered a five dollar imbalance and then had instructed two tellers involved to write handwritten "cash in" and "cash out" tickets to cover up the reporting error made by one of them. The bank had a policy against such forced balancing, however, and when Ms. Partin's action was discovered, she was called to a meeting and was told she was being demoted to teller because of her lack of managerial skills. Ms. Partin never returned to work after that meeting; she immediately saw her doctor, was referred to a psychiatrist, and was ultimately diagnosed with a major depressive disorder triggered by her demotion. Id., pp. 1-6, 810 So.2d at 1119-1121.
The OWC found that Ms. Partin had demonstrated by clear and convincing evidence that she had sustained a mental injury caused by extraordinary stress, noting that even though her demotion was handled in a professional, private and calm manner, Ms. Partin had become hysterical at the news. Id., p. 6, 810 So.2d at 1121-1122. The Third Circuit Court of Appeal affirmed. That court held that an objective standard must be employed, but nevertheless determined that an ordinary, reasonable person would have considered the demotion "sudden, unexpected and extraordinary" *736 because the discipline was not commensurate with the infraction. Id., pp. 6-7, 810 So.2d at 1122.
The Supreme Court reversed, holding that the claimant's injury was not compensable. The Supreme Court first analyzed the legislative history of subsection (7)(b) and concluded that it "reveals an active decision on the part of the legislature to so condition compensability in order to tighten the reigns of recovery for mental/mental claims." Id., p. 12, 810 So.2d at 1125. The Court went on to state that the legislature intended that the nature of the stress itself be evaluated, rather than evaluating the stress from the employee's perspective, an approach that would most certainly result in wider recovery because "nearly every employee would consider extraordinary a stress that caused him mental injury." Id. Turning to the particular case before it, the Court concluded:
In this case, Claimant personally found her demotion to be extraordinary and unexpected because she did not know that the bank was displeased with her management skills and she was quite settled in her career. Yet by its nature, a demotion for failing to satisfactorily perform one's job creates stress that is neither unexpected nor extraordinary in the usual course of employment at a bank. That is not to say that a demotion could not be handled in such a way that would make it unexpected or extraordinary. For example, if an employer used violence in demoting an employee, it would perhaps cause [such] stress
* * * * * *
The court of appeal's analysis went beyond evaluating the nature of the stress into evaluating the wrongfulness or unfairness of the bank's personnel action, which is properly the subject of an action at tort law rather than a workers' compensation claim Considering simply the nature of the stress itself in this case, we find that a demotion for lack of managerial skills creates stress that is neither unexpected nor extraordinary We conclude, therefore, that Claimant's mental injury is not compensable (Emphasis added.)

Id., pp. 14-15,810 So.2d at 1126.
In all pertinent respects, the facts of the instant case are virtually indistinguishable from those of Partin. Ms. Hankton contends that her one-day suspension (which cannot be considered as serious a penalty as the demotion in Partin) was sudden and unexpected because she was not previously made aware that her managerial/supervisory skills were lacking or that her supervisors were dissatisfied with her job performance. Just as in Partin, the claimant had a long history of employment, which included a series of promotions. Just as in Partin, the disciplinary action was precipitated by a specific incident of misconduct (in this case, Ms. Hankton's handling of the La Shay Johnson situation), which the employee considered too minor to warrant the punishment received. Just as in Partin, there was no evidence that the manner in which the claimant was informed of the employer's disciplinary action was anything other than courteous, private and professional. Just as in Partin, the claimant was diagnosed with disabling depression that her doctor attributed to the disciplinary action (although in Ms. Hankton's case, it is not as clear as in Partin that the claimant's depression was caused by the disciplinary action, rather than by work-related stress in general). For purposes of our determination, there is no pertinent distinction between Ms. Partin's position as a bank officer and Ms. Hankton's position as a supervisor in the City's Department of Public Works and Parking.
*737 Therefore, in light of Partin, we conclude that the OWC committed manifest error by finding, apparently based on a subjective standard, that Ms. Hankton's mental injury was the result of sudden, unexpected and extraordinary stress as required by La. R.S. § 23:1021(7)(b). Accordingly, we reverse the judgment of the OWC court insofar as it awards Ms. Hankton benefits for mental injury.

THE CLAIMANT'S ASSIGNMENTS OF ERROR
Ms. Hankton contends the OWC committed manifest error by failing to find that she sustained a compensable physical injury when she aggravated her back condition by having to stretch her right leg to reach the pedals of the City vehicle she was assigned to drive. In her testimony, Ms. Hankton was unable to give an exact time when she was injured, merely stating that she attributed her increased back and leg pain to being forced to drive a substandard vehicle. She testified that she had requested another vehicle, but had been refused. The City presented testimony that Ms. Hankton had actually requested an air-conditioned vehicle.
La. R.S. § 23:1031 limits recovery to situations where an employee has received "personal injury by accident arising out of and in the course of his employment." An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. § 23:1021(1).
Considering the record, we cannot say that the OWC was clearly wrong in finding that Ms. Hankton did not sustain a compensable physical injury. Because Ms. Hankton could not point to any specific incident that triggered her pain, the court could have reasonably concluded she failed to meet her burden of proving she was injured by an "accident." Moreover, there was no medical evidence to corroborate Ms. Hankton's claim that she re-injured her back by stretching to reach the gas pedal of the vehicle. The report of Dr. Mimeles, an orthopedist who examined the claimant at the request of the City, reflects that there was no significant trauma that caused Ms. Hankton's back pain, which Dr. Mimeles believed was consistent with ordinary wear and tear and degenerative arthritis; the report also indicates Dr. Mimeles found no objective reason to explain the numbness Ms. Hankton reported having in her leg.
Based on the evidence, we decline to overturn the judgment of the OWC denying Ms Hankton's claim of a physical injury.
Additionally, Ms. Hankton contends the OWC erred by failing to find that the City acted arbitrarily and capriciously in denying her benefits, and she, therefore, claims she is entitled to an award of penalties and attorney fees pursuant to La. R.S. § 23:1201(F). We reject this contention in light of our conclusion that Ms. Hankton suffered no compensable physical or mental injury and is, therefore, not entitled to benefits.

CONCLUSION
For the reasons stated, we reverse the judgment of the OWC insofar as it finds that Ms. Hankton sustained a compensable mental injury and awards her temporary total disability benefits and medical benefits. In all other respects, the judgment is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.