# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-760**


**JERAL H. SEMIEN**

**VERSUS**

**EADS AEROFRAME SERVICES, LLC**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District # 3
PARISH OF CALCASIEU, NO. 03-1937
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


**ELIZABETH A. PICKETT**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

### WRIT GRANTED AND MADE PEREMPTORY.



**Marcus M. Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**Counsel for Plaintiff/Respondent:**
        **Jeral H. Semien**

**Jeffrey J. Warrens**
**Johnson, Stiltner & Rahman**
**P. O. Box 98001**
**Baton Rouge, LA 70898-8001**
**Counsel for Defendant/Applicant:**
        **EADS Aeroframe Services, LLC**

PICKETT, Judge.

Defendant/Employer, EADS Aeroframe Services, L.L.C. (EADS), appeals a decision of an Office of Worker's Compensation Judge (WCJ) denying EADS' motion for summary judgment.

## FACTS

In March of 2003, Claimant, Jeral H. Semien, filed a claim for workers' compensation benefits alleging the following as the basis of her claim:

> I had been working under a lot of stress that people in the workplace was putting me through. I had already had an anxiety attack back in November 02 that the company was aware of [sic]. Then after the attack on 2-7-03, I went into depression.

Based upon her allegations in her claim and upon her deposition testimony, Claimant's employer, EADS, filed a Motion for Summary Judgment seeking to have Claimant's case dismissed. The WCJ denied EADS' motion and EADS filed a writ application with this court alleging the WCJ erred in denying its motion. This court granted EADS' writ application and called up the case for briefing and oral argument.

## LAW AND DISCUSSION

This case is before the court from a denial of a motion for summary judgment filed by EADS, who alleged that Claimant's Disputed Claim for Compensation form, LDOL-WC-1008, along with her deposition failed to raise any issue of material fact or establish the factual support necessary to establish a claim under La.R.S. 23:1021(7)(b). In *Sidwell v. Horseshoe Entm't Ltd. P'ship*, 35,718, pp. 2-4 (La.App. 2 Cir. 2/27/02), 811 So.2d 229, 230-31, our colleagues of the second circuit, addressing a procedurally similar case, stated:

> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to

1

accomplish these ends. La. C.C.P. art. 966(A)(2); *Yarbrough v. Federal Land Bank of Jackson*, 31,815 (La.App. 2d Cir.03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); *Leckie v. Auger Timber Co.*, 30,103 (La.App. 2d Cir.01/21/98), 707 So.2d 459. The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. *See*, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.

Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Kennedy v. Holder*, 33,346 (La.App. 2d Cir.05/10/00), 760 So.2d 587.

Mental injuries caused by mental stress have become commonly known in Louisiana workers' compensation jurisprudence as "mental/mental" injuries and are addressed by La. R.S. 23:1021(7)(b), which states as follows:

> Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. (Emphasis added).

The mental injury must be precipitated by an accident, an unexpected and unforeseen event that occurs suddenly or violently. *Edwards v. Fischbach & Moore, Inc.*, 31,371 (La.App. 2d Cir.12/09/98), 722 So.2d 344, *citing Sparks v. Tulane Medical Center Hosp. and Clinic*, 546 So.2d 138 (La.1989). The mere showing that a mental injury

was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to justify compensation. *Sparks, supra*; *Edwards, supra*. Absent an identifiable accident, general allegations of inability to work due to stress or tension caused by working conditions would not give rise to a compensable claim. *Id.*

Further, such a showing by the claimant must be by clear and convincing evidence. The "clear and convincing" standard requires a demonstration that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. *Edwards, supra*; *Renter v. Willis-Kingston Medical Center*, 28,589 (La.App. 2d Cir.08/23/96), 679 So.2d 603; *Mitchell v. AT & T*, 27,290 (La.App. 2d Cir.08/28/95), 660 So.2d 204, *writ denied*, 95-2474 (La.12/15/95), 664 So.2d 456.

*See also, McGrath v. Office of Mental Health Nursing Inpatient Serv.*, 00-1781 (La.App. 3 Cir. 5/16/01), 801 So.2d 441.

Clearly, Claimant's allegations in her Form 1008, even if taken as true, do not form the basis for a "mental/mental" claim.

Our examination of her deposition yields the same conclusion. Her deposition establishes that Claimant has a history of anxiety and depression for which she had sought medical treatment and for which she had taken medications.

In her deposition, Claimant goes through a litany of incidents starting in November 2002 and culminating with her packing up and walking out on February 7, 2003. These incidents can be categorized as follows: 1) vacation compilation; 2) preparation for Thanksgiving dinner; 3) the "hidden" keys; 4) the Christmas present; 5) the Christmas appreciation dinner; 6) employee meetings; 7) the job responsibility meeting; 8) the meeting on February 5, 2003; and 9) her last day of work (February 7, 2003).

**1) Vacation Compilation Incident**

Claimant testified that sometime before Christmas she was instructed to prepare a chart showing how much vacation time each employee in the Human Resources Department, where she was employed, had used and how much time each person had remaining. She stated that after completing the task, one employee debated her calculations and that her (Claimant's) boss, Phillip O'Connor, failed to support her. Thus, she alleges, this increased her stress level and cause her to be treated "differently" until she finally resigned.

**2) Preparation for Thanksgiving Dinner**

Claimant testified that she was not an original member of the committee tasked with planning a Thanksgiving dinner for their fellow employees but, after making several suggestions, she was asked to join the committee. She stated that her husband had access to tables and chairs through his employer and that she suggested they borrow these items rather than rent them. She alleged that she and Gina, the chairperson of the committee, had some disagreement over the tables and chairs and that she felt Gina got their boss's support, resulting in more stress.

**3) The Hidden Keys**

Claimant stated that the keys to the personnel files were normally kept in her right-hand desk drawer and that when she returned from vacation they were not there. She and a co-worker, Mark, found the keys in Gina's desk. This upset her.

**4) The Christmas present**

Claimant stated she also became upset when she returned from vacation to find a Christmas present on her chair from a co-employee. She attempted to return the

4

present "because I didn't feel that she really gave to me from her heart and I didn't buy her anything." The co-employee insisted Claimant keep the present.

**5) The Christmas appreciation dinner**

The committee who planned the Thanksgiving dinner also planned the EADS' Christmas party. In January 2003, an appreciation dinner was given for the members of the committee. Most of the committee members received invitations about a week before the dinner. According to Claimant, her invitation was "last minute," which upset her.

**6) Employee meetings**

Claimant stated that another thing which added to her stress was that beginning sometime before Christmas she was excluded from what she considered to be "staff" meetings. However, she admitted that these meetings were unscheduled and informal.

**7) The "Job Responsibility" meeting**

In January 2003, Claimant was asked to prepare a list of current Human Resource employees giving each person's job description. Thereafter, a meeting was held to discuss job descriptions. Claimant was not included in this meeting. Subsequently, another meeting was held with everyone, including Claimant, in attendance. At the second meeting new job descriptions were distributed to everyone; at the same time Mr. O'Connor instructed everyone to refrain from accruing overtime. Claimant asserts that her duties were increased, while other employees' duties were decreased, thus further increasing her stress level. She further asserts that although she complained about her new job description and was assured by Mr. O'Connor that he would re-do it, he never did.

5

**8) The meeting of February 5, 2003**

On February 5, 2003, Claimant stated that she was called into Mr. O'Connor's office to meet with EADS' Chief Operations Officer, John Schildroth, who wanted to know why the black employees were so disgruntled. According to Claimant, Mr. Schildroth commented that "he didn't want people to think EADS was a white man's country club." Claimant stated that, at the meeting, she told Mr. Schildroth the main thing was what appeared to be race-based differences in pay. At her deposition she added there also appeared to be race-based differences in job classification. Claimant testified that this meeting was particularly stressful because of a remark made by Mr. O'Connor that the Human resources Department "could work just find without [her]."

Claimant stated that after the meeting, she and Mr. Schildroth spoke about setting up a meeting between EADS' black employees and Mr. Schildroth to discuss concerns of racial bias at the plant. Claimant testified that Mr. Schildroth indicated to her the possibility of her becoming a member of his staff.

**9) Claimant's last day of work, February 7, 2003**

Claimant stated that when she came into work on February 7, 2003, Mr. O'Connor was not in his office. She related that a co-worker, Robin, asked her for her (Claimant's) key to Mr. O'Connor's office so she (Robin) could have it duplicated for Bob, another Human Resources employee. Claimant told Robin there was an extra key in Mr. O'Connor's office and gave it to her. Shortly after this, Robin, Gina and Mark (all Human Resource employees) drifted out of the office. Claimant said that Amanda, an employee in the computer room, asked her what the meeting in the other building, by the restroom, was about. Claimant stated that she went to the other building and observed several of he co-employees talking on their cellular telephones. When she returned to her desk she noticed an employee from maintenance changing

the lock on Mr. O'Connor's door.  Upon observing this, Claimant concluded that Robin's request for Mr. O'Connor's door key was just a ruse to get the key away from Claimant.  At that point, she packed up her personal items and left.

EADS does not dispute any of Claimant's allegations or her testimony.

## CONCLUSION

We conclude, from our de novo review of the record, that any mental injury suffered by Claimant was not the result of any sudden, unexpected, and extraordinary stress related to the employment.  We further conclude that any mental injury she may have sustained was related to the general conditions of her employment, or to incidents occurring over an extended period of time.  Thus, the record fails to demonstrate Claimant suffered any compensable injury.

## DISPOSITION

Accordingly, for the reasons stated above, the writ is granted and made peremptory.  The judgment of the WCJ is reversed and summary judgment is granted in favor of defendant/employer, EADS Aeroframe, Services, L.L.C., dismissing Jeral Simien's petition at her costs.

**WRIT GRANTED AND MADE PEREMPTORY.**