973 So.2d 851 (2007)
Bertha HANKTON
v.
CITY OF NEW ORLEANS, Through PARKING CONTROL DIVISION and Lynn Simon.
No. 2007-CA-0452.
Court of Appeal of Louisiana, Fourth Circuit.
December 12, 2007.
*853 Joseph G. Albe, New Orleans, LA, for Plaintiff/Appellant.
Charlene C. Larche, Deputy City Attorney, Albert Thibodeaux, Chief Deputy City Attorney, Penya Moses-Fields, City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
Plaintiff Bertha Hankton appeals the trial court's judgment finding no liability on the part of the defendants for her alleged injuries. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
The instant matter has an extensive history, having been considered by this court three times before. In 1999 Ms. Hankton filed a workers' compensation claim against her employer, the City of New Orleans [hereinafter "the City"], alleging mental and physical disability suffered in the performance of her job as a supervisor in the Department of Public Works and Parking. The Office of Workers' Compensation found that the plaintiff had sustained a work-related mental injury but not a physical injury, and awarded her temporary total disability. On appeal, this court affirmed in part and reversed in part, holding that plaintiff had not sustained any compensable injury, either mental or physical, under the facts as related in our opinion. See Hankton v. City of New Orleans, 01-0714 (La.App. 4 Cir. 6/19/02), 821 So.2d 730.[1] Approximately one month after this court's decision, Ms. Hankton, who had retired on account of her emotional/mental disability, filed a petition for damages in civil district court against both the City and one of her former supervisors, Ms. Lynn Simon. Citing essentially the same facts upon which her workers' compensation claim had been based, Ms. Hankton alleged in her petition that Ms. Simon had intentionally or negligently caused her emotional distress/depression by bringing unjustified disciplinary charges against her and by suspending her without pay for one day. In addition, Ms. Hankton asserted that the City was vicariously liable for Ms. Simon's alleged wrongful conduct.
The City filed exceptions of no cause of action and res judicata. By judgment rendered in open court July 23, 2004, the district court granted the exception of no cause of action as to the allegations of intentional conduct only, and granted the plaintiff five days to file an amended petition.[2] The trial court denied the exception of no cause of action with regard to the allegations of negligence, and denied the exception of res judicata. This court granted the City's writ application but denied relief, issuing written reasons. Hankton v. City of New Orleans, 04-1536 (La.App. 4 Cir. 12/1/04), 888 So.2d 1169 (unpublished).[3] The defendants then filed a motion for summary judgment, which the *854 district court granted, dismissing the suit with prejudice. On appeal, this court reversed, holding that the district court had based its decision on an invalid legal premise: that the filing of plaintiff's tort suit was precluded by the exclusivity provision of the Workers' Compensation Act. We therefore reinstated the matter and remanded for trial on the merits. See Hankton v. City of New Orleans, 05-0799 (La.App. 4 Cir. 5/10/06), 928 So.2d 770 (unpublished).
This matter was tried on October 23-24, 2006. On February 7, 2007, the district court rendered judgment dismissing the plaintiff's claims with prejudice and assessing costs to the plaintiff. In accompanying Reasons for Judgment, the court first noted that, pursuant to the law of the case doctrine, the defendants did not have tort immunity under the Workers' Compensation Act for the intentional and/or negligent acts alleged by the plaintiff. The court then found that the evidence was insufficient to prove that Ms. Simon had committed any intentional or negligent torts against the plaintiff. Specifically, the court noted that: the plaintiff was under Ms. Simon's supervision for only two months; Ms. Simon was not the plaintiffs direct supervisor; the plaintiff was given a one-day suspension for making a serious mistake; the plaintiff's supervisors handled this suspension delicately and professionally; the plaintiff had serious psychological and physical problems which preexisted her suspension and which were not caused by Ms. Simon's conduct. Finally, the court concluded that consideration of the City's vicarious liability was pretermitted by the plaintiffs failure to prove any tortious conduct on the part of Ms. Simon.
Ms. Hankton now appeals that judgment.
REVIEW OF THE EVIDENCE
The plaintiff's case included documentary evidence; her own testimony; the testimony of two of her former co-workers, Joan Davis and Zepporiah Edmonds; and the deposition testimony of Dr. John Jackson. The defendants presented documentary evidence; one live witness, Lynn Simon; and transcripts of testimony of certain other City employees from the Civil Service Commission hearing on Ms. Hankton's claim.
Ms. Hankton testified that at the time of trial, she was sixty years old and was on disability retirement as a result of stress; the last day she worked for the City was the day in June, 1998, that she was informed she was being suspended for one day for disciplinary reasons. Prior to that day, the plaintiff had worked twenty-four years for the City and had intended to retire after thirty years. After working most of her career in the Parking Division, Ms. Hankton was transferred to the Abandoned Vehicles Division in April, 1998. She testified she was transferred because of heightened news media attention given to the backlog of abandoned vehicles that were on the streets. As a field supervisor, the plaintiff was in charge of the actual stickering and requesting removal of vehicles; another supervisor, Veronica Thomas, was in charge of the office work in the division. The plaintiff supervised three people who also went into the field to place stickers on abandoned cars. Ms. Hankton testified that she was given a set of written procedures to follow when she began working in the Abandoned Vehicles Division, but she had no other training or experience. Her immediate supervisor was Richard Boseman initially and later was Rhonda Thompson; as Deputy Parking Administrator, Lynn Simon was over the plaintiff's immediate supervisor. Ms. Hankton testified she was confused about *855 the procedures but she knew not to speak up at weekly meetings because her comments were not taken seriously. She testified she requested a van to do her job because the vehicle she was assigned did not work properly and contributed to her back and leg pain, but Ms. Simon refused; as a result, Ms. Hankton was forced to ride with one of the other employees. She testified that she believed Ms. Simon was falsifying reports sent to the Mayor's office concerning the numbers of abandoned vehicles, but Ms. Hankton admitted she had never seen one of these reports. Ms. Hankton also testified that she believed certain confidential medical information from her personnel file was improperly leaked to her co-workers. Finally, Ms. Hankton testified that the one-day suspension she was given was unjustified, Ms. Hankton was told she was being suspended because she had written an improper memo to Lashay Johnson, one of the employees under her supervision. In the memo, which was introduced into evidence, Ms. Hankton informed Ms. Johnson that she would not be compensated for having worked overtime on a particular Saturday. Ms. Hankton testified that she wrote the memo exactly as she was instructed to by Ms. Simon. Ms. Hankton further testified that Ms. Simon's actions eventually caused her to become so stressed that she could no longer perform her job. According to Ms. Hankton, when she was told she was being suspended, she became so upset that she was never able to return to work again. She was placed on sick leave for approximately 230 days and eventually was granted a disability retirement. She admitted that the amount of monthly compensation she received for disability retirement was greater than the amount she would have received if she had been on regular retirement.
Joan Davis, one of Ms. Hankton's co-workers for fifteen years in the Parking Division, testified that Ms. Simon was difficult to work for. Ms. Davis stated that she also believed she was being mistreated during Ms. Simon's administration, and as a result Ms. Davis filed an EEOC complaint in 2000 alleging discrimination by Ms. Simon and another supervisor. Another co-worker, Zepporiah Edmonds, testified that Ms. Simon once told her that she (Ms. Simon) had set up Ms. Hankton to fail. However, Ms. Davis never witnessed Ms. Simon "being ugly" to Ms. Hankton or mistreating her.
The plaintiff introduced medical records from Dr. Yvonne Osborne, a clinical psychologist who treated the plaintiff from August, 1998 until May, 1999. Dr. Osborne issued a written opinion stating that, based upon her records and the history provided by Ms. Hankton, she believed Ms. Hankton's condition, diagnosed as Adjustment Disorder with Mixed Depression and Anxiety, was caused and/or aggravated by mental stress from her hostile work environment when she was working for the City during the period from 1996 to 1998. Dr. Osborne's records also show that she believed Ms. Hankton was able to return to work in April, 1999. The plaintiff also introduced the deposition of Dr. John Jackson, a neuropsychiatrist who did not begin treating Ms. Hankton until June, 1999, at which point she was no longer working. At the time he was deposed in 2006, Dr. Jackson testified he was still treating Ms. Hankton for depression, seeing her once every three months. He was shown a form he had completed in 1999 indicating that Ms. Hankton's mental condition was related to stress at work. He testified that although he had no independent recollection of that time, he believed his medical records from that time period (which records were apparently lost due to Hurricane Katrina) would support that opinion. He acknowledged, however, that *856 subsequent medical records, which reflected his treatment of Ms. Hankton from 2002 and afterward, indicated that her continued depression was being caused by factors other than stress from her former job.
The primary witness for the City was Ms. Lynn Simon. Ms. Simon testified she served as Deputy Administrator of Parking from 1996 until 2003. She stated that no one other than the appropriate supervisors had access to Ms. Hankton's medical records or personnel file. Ms. Simon denied that she had misrepresented the number of abandoned vehicles in her reports to the Mayor's office. She testified that the one-day suspension imposed upon Ms. Hankton in July, 1998 was based upon Ms. Hankton's poor performance of her job during the two months she had been assigned to the Abandoned Vehicles Division, combined with a specific incident concerning an improper memo Ms. Hankton had written to her subordinate, Lashay Johnson. Ms. Simon testified that Ms. Hankton had been instructed to inform Ms. Johnson that in order to be paid for overtime worked in another division, Ms. Johnson would have to obtain a copy of her time card from the other division and present it to Ms. Hankton. Instead, Ms. Hankton had written a memo telling Ms. Johnson she would not be paid for the overtime. Ms. Simon testified that Ms. Hankton became agitated when she was informed of her suspension because she did not believe any discipline was warranted. Finally, Ms. Simon testified that she herself had suffered no negative consequences as a result of the discrimination complaint filed against her by Ms. Edmonds.
The City also introduced the Civil Service Commission hearing transcript of the testimony of Richard Boseman and Rhonda Thompson. Mr. Boseman testified he was Ms. Hankton's immediate supervisor from the time she was transferred to the Abandoned Vehicles Division until two weeks before her suspension. He stated that Ms. Hankton was transferred to Abandoned Vehicles because she had not been handling her work properly in the Parking Division. Following the transfer, Ms. Hankton attended a staff meeting at which a memo detailing the new procedures was handed out and those procedures were explained by Ms. Simon. Ms. Hankton also attended subsequent weekly meetings; Mr. Boseman testified that at these meetings, he asked Ms. Hankton if she had any problems with the new procedures, but she said she did not. Mr. Boseman testified that the vehicle assigned to Ms. Hankton was brought in for repairs twice during this time, but, that there were other vehicles made available for her to use. He also testified that he noticed problems with Ms. Hankton's work during this time period, specifically that Ms. Hampton was not passing on the towing work orders to the other supervisor on a timely basis. Rhonda Thompson, who became Ms. Hankton's immediate supervisor after Mr. Boseman, confirmed his testimony that Ms. Hankton had attended weekly staff meetings. Ms. Thompson also testified that Ms. Hampton was provided an operable vehicle at all times, and that if she was not satisfied, she was allowed to use her own personal vehicle. She further testified that Ms. Hankton had never said she had a problem with the vehicle she was assigned. Ms. Thompson stated that there was an overall problem in the Abandoned Vehicles Division and she was not sure whose fault it was; however, the "followups," which were Ms. Hankton's responsibility, were not being done. She finally testified that the memo Ms. Hankton had sent to Lashay Johnson was clearly improper, and that Ms. Hankton had acknowledged only one error in the memo, *857 which was an error as to the date the overtime was worked.
The City also introduced medical records from two physicians who had examined Ms. Hankton and concluded that she had a preexisting major depressive disorder that was not caused by her job. In addition, the report of an orthopedist who examined Ms. Hankton in 1999 indicated that she did not have any back injury other than degenerative arthritis and that she had no physical condition that would prevent her being able to do her job.
DISCUSSION OF LAW AND FACTS
Ms. Hankton argues that the trial court committed manifest error by failing to find that the defendants' acts or omissions constituted intentional and/or negligent torts that caused plaintiff's injuries. Considering the evidence, we find no manifest error in the trial court's determination.
Intentional Tort Claim
The plaintiff contends that Ms. Simon deliberately harassed her in order to force her to quit her job. We agree with the trial court that the only intentional tort conceivably raised by the allegations of the plaintiff's petition is that of intentional infliction of emotional distress. To recover for intentional infliction of emotional distress, the plaintiff must show that the conduct of the defendant was extreme and outrageous, that the emotional distress suffered by the plaintiff was severe, and that the defendant desired to inflict severe emotional distress or knew that such was substantially certain to result from his conduct. Succession of Harvey v. Dietzen, 97-2815, p. 8 (La.App. 4 Cir. 6/24/98), 716 So.2d 911, 916 (citing White v. Monsanto Co., 585 So.2d 1205 (La.1991)). Considering the evidence presented, we agree with the trial court that the plaintiff failed to prove that Ms. Simon's conduct was extreme or that Ms. Simon intended to cause Ms. Hankton severe emotional distress.
Although there was testimony that Ms. Simon was difficult to work for, there was no evidence of any specific conduct that could be considered extreme or outrageous. Ms. Edmonds, the one witness who testified that Ms. Simon had revealed her intention to cause Ms. Hankton to fail, admitted that she had never seen or heard Ms. Simon actually mistreat Ms. Hankton. Moreover, Ms. Simon testified that Ms. Hankton's one-day suspension was primarily based upon Ms. Hankton's failure to follow instructions with regard to the memo she wrote to Ms. Johnson. Ms. Hankton's only explanation, that she wrote exactly what she was told to write, is implausible in light of the text of the memo, which was placed in evidence. Moreover, the length of the suspension, which was the minimum possible amount of time, does not appear to be unreasonable in light of the infraction. Finally, there was no evidence that Ms. Simon screamed, yelled, berated Ms. Hankton, or behaved in an unprofessional manner when she informed Ms. Hankton of her suspension. Therefore, we do not find the trial court's determination that no intentional tort was committed to be unreasonable considering the evidence.
Negligence Claim
Plaintiffs claim that her mental condition was caused by Ms. Simon's negligence must be determined pursuant to a duty-risk analysis. To show liability on the part of the defendant, the plaintiff must prove four elements: (1) the defendant owed a duty to the plaintiff; (2) the requisite duty was breached by the defendant; (3) the defendant's conduct was a cause-in-fact of the resulting harm; and (4) the risk of harm was within the scope of protection afforded by the duty breached. LeJeune v. Union Pacific Railroad, *858 97-1843, p. 6 (La.4/14/98), 712 So.2d 491, 494.
Although Ms. Simon clearly had a duty to treat the plaintiff fairly, we agree with the trial court that the evidence does not support the plaintiff's contention that this duty was breached. The evidence fails to establish any specific incident in which Ms. Simon's treatment of Ms. Hankton was unfair, unreasonable or unprofessional. Moreover, although plaintiff clearly suffers from a mental disability, there is competent medical evidence indicating that her mental problems preexisted and contributed to her inability to perform her jab satisfactorily. Therefore, we do not find the trial court's conclusion that plaintiff failed to prove her negligence claim to be unreasonable based upon the record.
CONCLUSION
Because we find no manifest error in the trial court's dismissal of the plaintiff s claims against Ms. Simon, the plaintiff's claim of vicarious liability on the part of the City is moot. Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] This court affirmed the finding of no compensable physical injury based upon the lack of medical evidence and the absence of any trauma. We also concluded the claimant had not sustained a compensable mental injury because she had failed to prove that her depression was the result of "sudden, unexpected and extraordinary stress."
[2] The plaintiff timely filed an amended petition.
[3] Relying on O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, this court found that because Ms. Hankton had alleged a type of mental disability that fell outside the ambit of workers' compensation coverage, she must be allowed to pursue her tort claims in civil court.