# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-187

**SCARLET CHRISTINE ADAMS**

**VERSUS**

**TEMPLE INLAND, LA**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3,
PARISH OF CALCASIEU, NO. 01-06875,
HONORABLE CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*
**NED E. DOUCET, JR.**
**CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*

Court composed of Ned E. Doucet, Jr., Chief Judge, Billie Colombaro Woodard and Jimmie C. Peters, Judges.

**AFFIRMED.**

Woodard, J. concurs and assigns written reasons.

Peters, J., dissents and assigns written reasons.

**R. Scott Iles**
**P. O. Box 3385**
**Lafayette, LA 70502**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Scarlet Christine Adams**

**Mark L. Riley**
**Onebane Law Firm**
**P. O. Drawer 3507**
**Lafayette, LA 70502**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Temple Inland, LA**

DOUCET, Chief Judge.

In this workers' compensation case, Claimant, Scarlet Christine Adams, appeals a judgment denying her claim for benefits in connection with her mental injury caused by mental stress due to sexual harassment in the course of her employment. For the following reasons, we affirm the judgment of the Workers' Compensation Judge (WCJ).

**DISCUSSION OF THE RECORD**

At the beginning of trial, the parties stipulated that there were no facts in dispute and that the matter presented only a legal issue.

The undisputed facts establish that Ms. Adams began working for Temple Inland, LA (Temple Inland) in late 2000 or early 2001 as a utility hand. Almost immediately after she began her employment, her supervisor, David James "Red" Harper, and a co-worker, Kevin St. Romain, began sexually harassing her. Initially, the harassment took the form of "little comments in front of all the . . . guys in the break room." For example, when Ms. Adams would bend over, Harper and St. Romain would talk about "what they would like to do." Another co-worker, Syrina Silas, also began making comments to Ms. Adams's male co-workers that Ms. Adams was not married and "needed to be laid." Harper carried the harassment even further by requiring Ms. Adams to leave her workstation at times and spend time in his office. There, he would describe to her the various ways in which he wanted to have sex with his wife and would complain about his wife's unwillingness to engage in these sexual activities.

It did not take long for Harper's and St. Romain's harassment to escalate beyond vulgar comments to propositions and threats. When Ms. Adams began refusing to enter Harper's office with him, he warned her that he could make her job

easy or difficult. He also began propositioning Ms. Adams to have sex with him, which she refused to do. Despite her rejection of his advances, Harper continued to press Ms. Adams for sexual favors, explaining to her that her job would be in jeopardy if she did not submit. Additionally, in the presence of Ms. Adams's co-workers, Harper "offered to get a hotel room so the guys could get [her] out of their system." On at least one occasion, Harper required Ms. Adams, who worked the night shift, to stay late for clean-up duties and threatened to take her to a place where no one would be able to hear her screams and then rape her. Ms. Adams's fears in this regard were exacerbated by a rumor that Harper had sexually exploited another female employee by having sex with her in the sleeper cab of a truck at work and then requiring her to give sexual favors to other men at work, under the threat of job loss. St. Romain also threatened to rape her and to burn her house down.

Moreover, the sexual harassment by Harper and St. Romain turned physical as well. Harper confined Ms. Adams to "areas where he could just get to [her]," and "he would pin [her] in a corner, and [she] would get felt up." Additionally, Harper "would grab himself and ask [her] if [she] wanted some." St. Romain also groped Ms. Adams.

In June of 2001, Ms. Adams reported the harassment to Temple Inland's human resources department. To its credit, shortly thereafter, Temple Inland terminated Harper's employment and suspended and then transferred St. Romain and Ms. Silas.

The sexual harassment resulted in Ms. Adams developing psychological problems. Prior to the harassment, Ms. Adams had not had such problems nor had she ever seen a counselor or mental health professional. In July of 2001, Ms. Adams saw Dr. Charlotte M. Fowler, a family practitioner, at the DeRidder Family Health Clinic. Dr. Fowler diagnosed anxiety and prescribed medication. Additionally, Dr. Fowler reported that Ms. Adams "must find counseling [for] this tremendous amount of stress

2

and trauma that she is handling."

On July 24, 2001, and August 22, 2001, Ms. Adams saw Dr. David S. Post, a clinical psychologist, for evaluation of psychological problems arising from the harassment at Temple Inland. Following psychological evaluation and testing, Dr. Post determined that Ms. Adams was "suffering from severe traumatic anxiety as a result of her harassment on the job" and diagnosed her as having acute stress disorder with agoraphobia and depressive disorder. Dr. Post cautioned that Ms. Adams was "at high risk for developing major depressive disorder if her conditions [did] not improve." He recommended that Ms. Adams leave her employment with Temple as soon as possible and that she be evaluated for a trial of anxiolytic and antidepressent medication should her anxiety disorder continue. Thereafter, by letter dated September 5, 2001, Dr. Post advised Temple Inland of Ms. Adams's condition "due to unusual treatment in her work environment." Dr. Post also informed Temple Inland that he had advised Ms. Adams "that she must take an immediate medical leave of absence from work in order to prevent serious deterioration of her mental and physical health."

Ms. Adams discontinued working and filed a claim for compensation benefits for mental injury from the sexual harassment as well as for an unrelated elbow injury. The parties stipulated at the hearing that there was an injury to Ms. Adams's elbow for which Temple Inland was continuing to provide medical treatment. At the hearing on the claim, the sole issue before the WCJ was the compensability of the claim for benefits arising out of the sexual harassment.

The WCJ rendered judgment in favor of Temple Inland and dismissed Ms. Adams's claim, finding as follows:

The court found that the claimant failed to prove her injury was caused

3

by a sudden, unexpected and extraordinary situation; in fact, it was due to events that occurred over an extended period of time, not by a sudden, unexpected or extraordinary event. Claimant testified that the various events and occurrences of sexual harassment stretched from January 2001 to June 2001. Based on the testimony presented, the court is unable to identify a "sudden, unexpected and extraordinary" occurrence. This court by no means condones the behavior of the defendants' employees; however, this claim does not meet the conditions established under the Workers' Compensation Act to be a compensable claim.

Ms. Adams has appealed this judgment, contending that the WCJ erred in concluding that, because the sexual harassment occurred over an extended period of time, her mental injury is not compensable.

## DISCUSSION OF THE LAW

Louisiana Revised Statutes 23:1021(7)(b) (Emphasis added) provides as follows concerning a "mental/mental" claim:

> **Mental injury caused by mental stress**. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, *unless the mental injury was the result of a sudden, unexpected, and extraordinary stress* related to the employment and is demonstrated by clear and convincing evidence.

In *Pham v. Contico Int'l, Inc.*, 99-945, pp. 5-6 (La.App. 5 Cir.3/22/00), 759 So.2d 880, 882-83 (footnotes omitted)(emphasis added), our brethren of the fifth circuit pointed out the following:

> We note that the exclusive remedy provisions of R.S. 23:1032 do not grant an employer immunity from all tort suits by an employee simply by virtue of the employment relationship between the two. *This State recognizes an employee's cause of action against an employer for the torts of wrongful or retaliatory discharge, sexual harassment, and false accusation, false imprisonment, and defamation*. Therefore, the statutory immunity granted to an employer by LSA-R.S. 23:1032 is not an immunity from all tort suits by an employee, but only those on account of an injury or disease compensable under the workers' compensation statutory scheme.

Additionally, we note the case of *Sidwell v. Horseshoe Entm't Ltd. P'ship.*, 35,718 (La.App. 2 Cir.2/27/02), 811 So.2d 229. In *Sidwell* the Claimant alleged that

4

she was sexually harassed by being subjected to repeated sexual comments by a co-worker who also showed her a nude picture of himself. The court, in *Sidwell*, noted the following:

> Mental injuries caused by mental stress have become commonly known in Louisiana workers' compensation jurisprudence as "mental/mental" injuries and are addressed by La. R.S. 23:1021(7)(b), which states as follows:
>
> > Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a *sudden, unexpected, and extraordinary* stress related to the employment and is demonstrated by clear and convincing evidence. (Emphasis added).
>
> The mental injury must be precipitated by an accident, an unexpected and unforeseen event that occurs suddenly or violently. *Edwards v. Fischbach & Moore, Inc.*, 31,371 (La.App.2d Cir.12/09/98), 722 So.2d 344, *citing Sparks v. Tulane Medical Center Hosp. and Clinic*, 546 So.2d 138 (La.1989). The mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to justify compensation. *Sparks, supra; Edwards, supra*. Absent an identifiable accident, general allegations of inability to work due to stress or tension caused by working conditions would not give rise to a compensable claim. *Id.*

*Id.* at 231.

In the recent case of *Partin v. Merchants & Farmers Bank*, 01-1560 (La. 3/11/02), 810 So.2d 1118, the claimant alleged that she suffered a compensable mental injury when her employer (a bank) demoted her after eighteen years of employment on the basis that she lacked managerial skills. The OWC awarded benefits and this court affirmed. The supreme court noted that, while the claimant personally found the demotion to be extraordinary and unexpected because she did not know that her employer was displeased with her and because she was quite settled in her career, "by its nature, a demotion for failing to satisfactorily perform one's job creates stress that

5

is neither unexpected nor extraordinary in the usual course of employment at a bank." *Id.* at 1126. The court explained that "[a] personnel action is not necessarily extraordinary because it is unfair from the employee's point of view." *Id.* The supreme court went into great detail in analyzing the LAW applicable to "mental/mental" claims stating as follows:

> Prior to 1989, Louisiana courts were split on whether mental injuries caused solely by mental stress (known as "mental/mental" claims) were compensable under the Workers' Compensation Act. At that time, the term "injury" was defined in subsection 1021(7) of the Act, which stated:
>
> > "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
>
> La. R.S. 23:1021(7) (1989). To remedy this split in the courts, a bill was proposed in the state legislature that eliminated the compensability of mental/mental claims. Minutes of Meeting, House Committee on Labor and Industrial Relations 15 16, May 26, 1989, Reg. Sess. 1989. It retained the text of subsection 1021(7) but redesignated it as 1021(7)(a), and then added subsection 1021(7)(b), which stated:
>
> > (b) **Mental injury caused by mental stress.** Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter.
>
> H.B. No. 1431, Reg. Sess. 1989 (original version). This amendment was proposed along with many other amendments to the Workers' Compensation Act, which were presented together as House Bill No. 1431. The stated purpose of HB 1431 was to address the problem of employers' increased liability in many areas, including mental injury claims. House Minutes, *supra* at 15. The bill's author explained that the bill addressed the "crisis" in Louisiana regarding workers' compensation insurance: Louisiana had the sixth highest workers' compensation insurance rate in the United States, which prevented new businesses from being able to obtain the insurance. Minutes of Meeting, Senate Committee on Labor and Industrial Relations 4, June 7, 1989, Reg. Sess. 1989 A proponent of the bill explained that the bill addressed the fact that Louisiana courts had been

6

ignoring much of the language in the Workers' Compensation Act, and that if the laws had been interpreted as they were written, constant changes would not be necessary. House Minutes, *supra* at 18. He stated that the bill was meant to statutorily override cases that had liberalized the workers' compensation law regarding mental stress and heart attacks, and to impose more difficult tests in order to recover. Senate Minutes, *supra* at 5.

The proposed language in subsection 1021(7)(b) regarding mental/mental claims passed the house on June 1, 1989. Official Journal of the House of Representatives of the State of Louisiana, Twenty-Ninth Day's Proceedings 30, Reg. Sess. 1989, June 1, 1989. Twelve days later, however, the Senate adopted an amendment which added a clause to subsection 1021(7)(b) that made mental/mental claims compensable in certain circumstances. Official Journal of the Senate of the State of Louisiana, Twenty-Ninth Day's Proceedings 14, Reg. Sess. 1989, June 13, 1989. The added clause is indicated below with underlined text:

> (b) **Mental injury caused by mental stress.**
> Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, *unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.*

*Id*. This amendment was adopted by the house on June 21, 1989, and the bill passed the legislature with the added language that mental/mental claims were not compensable except under those limited circumstances. House Journal, *supra*, Forty-Third Day's Proceedings at 30, June 21, 1989. The governor signed HB 1431 on June 30, 1989, and it became effective as Act 454 of 1989 on January 1, 1990. 1989 La. Acts 434.

During the window of time between the enactment of HB 1431 and its effective date, this court held that a mental/mental claim was compensable as an "injury" under the pre-amendment version of La. R.S.23:1021(7) in *Sparks v. Tulane Med. Center Hosp. & Clinic*, 546 So.2d 138 (La.1989) (decided on September 11, 1989). Our decision today, though, is governed by the new, amended version of the law governing mental/mental claims found at La. R.S. 23:1021(7)(b), as quoted above. Subsection 1021(7)(a) (which was previously designated as subsection 1021(7)) is no longer at issue because the new law specifically provides for mental/mental claims in subsection 1021(7)(b).

In a mental/mental claim, a claimant must not only satisfy subsection 1021(7)(b), but also the general requirements for recovery under the Workers' Compensation Act, found in La. R.S. 23:1031.

7

Section 1031 limits recovery under the Act to situations where "an employee not otherwise eliminated from the benefits of this Chapter receives *personal injury by accident arising out of and in the course of his employment*." La. R.S. 23:1031 (emphasis added). We note that subsection 1021(7)(b) incorporates this entire emphasized phrase into its definition of mental injury, stating that a mental injury or illness resulting from work-related stress shall not be considered a "*personal injury by accident arising out of and in the course of his employment*" and is not compensable unless the mental injury resulted from a sudden, unexpected, and extraordinary stress related to the employment. In contrast, subsection 1021(7)(a) does not contain this language, but simply defines "injury" and "personal injuries" as injuries by violence to the physical structure of the body and their naturally-resulting diseases or infections. La. R.S. 23:1021(7)(a). Yet, by incorporating the language from section 1031 into subsection 1021(7)(b), we do not think that the legislature intended the requirement of "sudden, unexpected, and extraordinary stress related to the employment" to satisfy the whole of "personal injury by accident arising out of and in the course of employment." Our conclusion is supported by the legislative history of subsection 1021(7)(b). As discussed above, the house originally intended for subsection 1021(7)(b) to preclude the compensability of all mental/mental claims. It accomplished this by referring to the basic requirements of compensability under section 1031 in a peremptory statement that "a mental injury or illness resulting from work-related stress shall not be considered *a personal injury by accident arising out of and in the course of employment* and is not compensable pursuant to this Chapter." H.B. No. 1431, Reg. Sess. 1989 (original version) (emphasis added). However, when the senate later chose to amend that subsection and make mental/mental claims compensable in certain limited circumstances, it merely tacked on an "unless" clause to the end of the original language, rather than redrafting the entire subsection. Senate Journal, *supra*, Twenty Ninth Day's Proceedings at 14, June 13, 1989. The logical deduction is that the legislature did not intend to displace the basic requirements of accident, arising out of employment, and in the course of employment in mental/mental claims. Rather, the legislature intended to provide narrow circumstances under which mental/mental claims would be compensable, assuming that the requirements of accident, arising out of employment, and in the course of employment were also satisfied. Therefore, a mental/mental claimant must fulfill both the requirements in section 1031 and those in subsection 1021(7)(b) in order to recover.

For the reasons below, we conclude that Claimant's injury fails to meet the requirements of subsection 1021(7)(b). Because her failure to meet the requirements of subsection 1021(7)(b) precludes Claimant's recovery for her mental/mental claim, it is not necessary to also discuss whether the requirements of section 1031 are met.

In analyzing Claimant's injury under subsection 1021(7)(b), we

8

first note that this subsection states in part that a mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. Claimant contends that the stress brought on by her demotion was unexpected and extraordinary because Claimant's career at the bank was well-established and successful, Claimant was close to reaching retirement, and the demotion was not a known, scheduled event. Claimant testified that she in no way expected this demotion because she assumed the bank was satisfied with her written explanation of the incident involving the five dollars, and because she had no prior indications that the bank was dissatisfied with her performance as a manager. Nevertheless, we find that, even under the facts as presented by Claimant, this demotion does not fit the meaning of unexpected and extraordinary stress under subsection (7)(b).

Although subsection (7)(b) falls under the "definitions" subpart of the Workers' Compensation Act, it reads more like a declaration of the conditions under which a mental injury will be compensable. In this way, it is not so much a definition of mental injury as it is a definition of *compensable* mental injury. Under the statute, a mental injury is compensable depending upon the type of stress which triggers that injury. The legislative history of subsection (7)(b), outlined above, reveals an active decision on the part of the legislature to so condition compensability in order to tighten the reigns of recovery for mental/mental claims. The desire for more difficult tests and restricted recovery indicates that the legislature intended that the nature of the stress itself be evaluated, rather than the stress being evaluated from the employee's perspective. This of course differs from the determination of whether an "event" was unexpected or unforseen under the accident requirement of subsection 1021(1), which is made by viewing the event from the employee's perspective. *See Williams*, 546 So.2d at 156; *Parks v. Insurance Co. of N. Am.*, 340 So.2d 276, 281 (La.1976); *Ferguson v. HDE, Inc.*, 270 So.2d 867, 870 (La.1972). Yet we find that this different evaluation of the "stress" under subsection 1021(7)(b) is mandated by the legislative intent. If the stress were evaluated from the employee's perspective, much wider recovery would result under subsection (7)(b) because nearly every employee would consider extraordinary a stress that caused him mental injury. Although Louisiana courts have construed the terms of the Workers' Compensation Act liberally in light of its "beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the costs in channels of commerce," there is a legislative intent to the contrary in subsection (7)(b). *Sparks*, 546 So.2d at 146 (quoting *Parks v. Insurance Co. of N. Am.*, 340 So.2d 276, 281 (La.1976)). The most likely inference is that the legislature intended to restrict recovery under subsection (7)(b) to those mental injuries that result from stresses which, by their nature, are sudden, unexpected, and extraordinary in the usual course of

9

employment in that working environment.

Given its proper and necessary interpretation, it is evident that the new law under subsection 1021(7)(b) addresses the concerns previously expressed by this and other Louisiana courts. Before subsection 1021(7)(b) took effect and provided an express statutory basis for mental/mental claims, courts struggled to find a place for such claims under what was then subsection 1021(7), which basically restricted "injuries" to those caused by violence to the physical structure of the body. *See, e.g., Sparks v. Tulane Med. Center Hosp. & Clinic*, 546 So.2d 138 (La.1989); *Jones v. City of New Orleans*, 514 So.2d 611 (La.App. 4 Cir.1987); *Guillot v. Sentry Ins. Co.*, 472 So.2d 197 (La.App. 5 Cir.1985); *Taquino v. Sears, Roebuck and Co.*, 438 So.2d 625 (La.App. 4 Cir.1983). *Sparks* reasoned that mental/mental claims were compensable under the old law because there was violence in the form of a harmful effect on the physical structure of the body, which includes the complex of integrated and interdependent bones, tissues and organs that function together by means of electrical, chemical and mechanical processes. *Sparks*, 546 So.2d at 145-46 (quoting *Bailey v. American Gen. Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315, 318 (1955)). In doing so, the *Sparks* court was also aware of the potential problems that could result if every claim of mental injury were compensable. While the strict language in subsection 1021(7) did not appear to lend itself to a limitation on the compensability of mental/mental claims, the "accident" requirement did. The court stated:

> [A] mere showing that a mental injury was related to the *general conditions* of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation. The mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently.

*Sparks*, 546 So.2d at 147 (emphasis in original). Under the new law, it is not necessary to limit mental/mental claims through the accident requirement as was appropriately done under the old law in *Sparks*. The new law provided in subsection 1021(7)(b) supplies its own limitation by disallowing compensation for mental injuries unless they result from stress that, by its nature, is sudden, unexpected, and extraordinary in the usual course of employment in that working environment. Although the accident requirement must still be fulfilled as explained above, the limitation on claims should now be found in subsection 1021(7)(b).

*Partin*, 810 So.2d at 1122-26 (Underlining ours).

In the instant case, the WCJ determined that, because there was not a single ,unexpected, and extraordinary "event" that caused Ms. Adams's mental injury

10

but rather "various events and occurrences of sexual harassment" that had "occurred over an extended period of time," Ms. Adams failed to prove that her mental injury was compensable.

The most recent case we have found addressing alleged sexual harassment is *Morris and Dickson Co. Ltd. v. Killingworth*, 36,117 (La.App. 2 Cir. 10/4/02), 830 So.2d 332, *writ denied*, 03-71 (La. 3/28/03), 840 So.2d 571. In *Morris and Dickson*, their employee, Deborah Killingworth, resigned stating she was unable to work due to depression, anxiety attacks and other health problems which resulted from an incident on April 14, 2000, when she was sexually harassed by a male co-worker. Following her resignation she sued Morris and Dickson in federal court alleging sexual harassment and retaliation, both violations of Title VII of the Civil Rights Act of 1964. In response to her suit, Morris and Dickson "filed a disputed claim form with the Office of Workers' Compensation ("OWC"), alleging a bonafide dispute with regard to Killingworth's injuries." *Id.* at 333. Killingworth answered the workers' compensation action with an exception of lack of subject matter jurisdiction which was denied by the OWC. On review of Ms. Killingworth's writ application, the second circuit reversed the judgment of the OWC stating:

> Killingworth contends the OWC does not have jurisdiction over her sexual harassment claim because it is outside of the scope of the Louisiana Workers' Compensation Act, ("WCA"), i.e., LSA-R.S. 23:1021 et seq. . . . M & D asserts that the judgment simply allows the employer the statutory right to proceed with a bonafide dispute of an on-the-job mental injury and the ability to conduct discovery to defend such a claim in the only arena at their disposal. We disagree. The weakness of M & D's argument lies in the failure to recognize the distinction drawn in Louisiana law between claims that arise under the state workers' compensation law and claims that arise under other statutes and authorities.
>
> . . . .
>
> [A] state law basis for refuting M & D's claim is provided by LSA-R.S.

11

23:1032(B), which states:

> Nothing in the Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under *any other statute or the liability, civil or criminal, resulting from an intentional act.* (Emphasis added.)

> Under the applicable statutory authority, Killingworth's sexual harassment claim is not within the scope of this state's workers' compensation law. Therefore, we find that the OWC does not have jurisdiction over this claim.

While we deplore the conduct of Ms. Adams' co-workers, we do note that as soon as she reported their offending actions to management, her chief protagonist was fired and the other two, lesser offenders, were first suspended, then transferred. Our review of the statutory scheme and the jurisprudence convinces us that, while Ms. Adams may have a legal remedy for the mental injury she sustained, that remedy does not lie under the Workers' Compensation Act.

Accordingly, for the reasons stated above, the judgment of the OWC is affirmed. Inasmuch as Claimant is before us as a pauper, we pretermit the assessment of costs.

**AFFIRMED.**

NUMBER 03-187

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SCARLET CHRISTINE ADAMS

     Plaintiff - Appellant

Versus

TEMPLE INLAND, LA

     Defendant - Appellee

On appeal from the Office of Workers Compensation, District 3 [No. 01-6875], for the Parish of Calcasieu, State of Louisiana; the Honorable Charlotte L. Bushnell, Workers' Compensation Judge, presiding.

Woodard, J., concurring.

While I find that *Partin v. Merchants & Farmers Bank*[1] mandates that we dismiss Ms. Adams' claim, I respectfully disagree with our supreme court's interpretation, in that case, of the legislature's intent in La.R.S. 23:1021 (7)(b), which, expressly, makes a mental/mental injury compensable.

As the supreme court recognizes in *Partin*, before 1989, the Workers' Compensation laws did not, specifically, address mental/mental claims. Nonetheless, some lower courts had considered them to be compensable. However, other lower courts had found that the workers' compensation laws did not encompass such claims. Thus, attempting to remedy the split in these courts, the legislature added an express provision concerning mental/mental claims. As originally drafted, the provision, eliminated mental/mental claims from the scope of the workers' compensation laws.[2] It read:

---

[1] 01-1560 (La. 3/11/02), 810 So.2d 1118.

[2] *See Id.*

(b) **Mental injury caused by mental stress**. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter.

However, the legislature <u>did not adopt</u> the provision as written. Instead, the Senate added the following to it:

> *unless* the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.[3]

(Emphasis added.)

Notwithstanding, in *Partin*,[4] the supreme court interpreted, the final version as if it did not contain the italicized language, below:

> Mental injury or illness resulting from work-related stress shall not be considered a personal injury *by accident arising out of and in the course of employment* and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.[5]

Specifically, the supreme court found that the amending "unless" clause referred, only, to "injury," not to the entire clause that preceded it—"by accident arising out of and in the course of employment." It reasoned that this language was but a remnant of the proposed bill which eliminated mental/mental claims, altogether.[6] Thus, it construed the language, not in light of its surrounding statutory text but, rather, in light of a *proposed* provision that failed to garner enough votes to become law. In doing so, it adopted a construction of La.R.S. 23:1021(7)(b) that renders the clause "by accident arising out of and in the course of employment," superfluous, because, in effect, its interpretation disregards this language. In doing so, it violates well-settled rules of statutory interpretation.

---

[3]*See Id.*

[4]*Id.*

[5]La.R.S. 23:1021(7)(b).

[6]*Partin,* 810 So.2d 1118.

Rules of statutory interpretation require "courts [to] give effect to *all* parts of a statute, and not adopt a construction making any part superfluous or meaningless, if that result can be avoided."[7] "Statutory interpretation commences with the language of the statute and progresses with the assumption that <u>*each*</u> *statutory term* has a particular, non-superfluous meaning."[8] (Emphasis added.)

If the legislature intended *Partin's* interpretation, it, easily, could have eliminated "by accident arising out of and in the course of employment" from the amendment or worded it "unless *the accident causes* mental injury that was the result of a sudden . . . ." Since it did neither, I believe we must presume that it intended for the "unless" clause to refer to the entire preceding clause which covers *accident*, as well as injury.

This makes sense, given that the "unless" clause contains language which parallels La.R.S. 1031(a)'s requirement of "accident arising out of and in the course of employment" but redefines the "accident" requirement so that it is germane to this section's special type of injury. Specifically, regarding *physical* injuries, the legislature defines "accident" in La.R.S. 1021(1) as "an *unexpected* or *unforeseen actual, identifiable, precipitous <u>event</u>* happening *suddenly* or *violently*," while for a mental injury, it parallels this language in (7)(b) with "*sudden, unexpected* and *extraordinary <u>stress</u>*." These latter adjectives do not describe the mental injury, itself; rather, they describe the stress or the *cause* of the mental injury. In other words, just as "accident" and the adjectives used in its definition in La.R.S. 1021(1) do not refer to the injury, itself, but, rather, to the cause of the injury, so do the adjectives that describe the stress refer to the *cause* of the injury, not the injury, itself. While (7)(b) does not use the word *"cause,"* it is obvious that this is what it means when it states mental injury that "*results from....,*" which implies *cause.*

Simply, the meaning of (7)(b) is logically discerned by changing it from a negative statement to a positive one which, essentially, deems that there has been a work related accident and a compensable injury when the mental injury resulted from

---

[7]*First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065, p. 8 (La. 2/20/95), 650 So.2d 1148, 1153 (citing *Dore v. Tugwell*, 228 La. 807, 84 So.2d 199, 204 (1955)).

[8]*State v. Joshlin*, 99-1004, p. 5 (La. 1/19/00), 752 So.2d 834, 837 (citing *Bailey v. United States*, 516 U.S. 137, 145-46, 116 S.Ct. 501 (1995)).

"a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence." (Emphasis added)

Basically, the legislature incorporated 1031's requirements into those for (7)(b) claims, using language in (7)(b) that is more applicable to mental injuries caused by mental stress than is the language used to define "accident" for a physical injury. Thus, this indicates that our legislature intended for the analysis of a compensable mental/mental injury to be completely contained within (7)(b)'s borders and, thus, for our analysis to end once a plaintiff meets those requirements. A further indication of (7)(b)'s intended self-sufficiency is that the legislature, also, delineates within that provision a special burden of proof for a mental injury. On the contrary, *Partin's* splintered approach regarding a mental/mental injury requires a plaintiff to prove causation twice. Namely, a plaintiff must prove "accident," a *causation* element under 1031(a), *in addition to* (7)(b)'s *causation* element, even though the legislature intended the latter to be a substitute for that in 1031.

By the legislature's establishment of a worker's compensable mental/mental claim, albeit in limited circumstances, surely, it intended for Ms. Adams' situation to constitute such a circumstance, given the foul behavior of her co-workers towards her and the prodigious distress, which she proved their behavior caused. Nevertheless, given *Partin*, I am constrained from giving her relief.

4

SCARLET CHRISTINE ADAMS

VERSUS

TEMPLE INLAND, LA

PETERS, J, dissenting.

Initially, I respectfully disagree with the majority's conclusion that Ms. Adams has no remedy under the Workers' Compensation Act. As I appreciate the majority's position in part, it is that the WCJ does not have subject matter jurisdiction over Ms. Adams's sexual harassment claim because it is outside of the scope of the Workers' Compensation Act.

I note that Temple Inland has not challenged the subject matter jurisdiction of the WCJ over Ms. Adams's claim. Nevertheless, "[t]he issue of subject matter jurisdiction . . . may be considered at any time, even by the court on its own motion, at any stage of an action." *Boudreaux v. State, Dep't of Transp. & Dev.*, 01-1329, pp. 7-8 (La. 2/26/02), 815 So.2d 7, 13. Still, I do not find that the WCJ lacks subject matter jurisdiction over this claim.

Louisiana Revised Statutes 23:1310.3(E) provides in part that "the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter . . . ." Ms. Adams's claim is for workers' compensation indemnity and medical benefits as well as penalties and attorney fees in connection with her mental injury caused by mental stress due to sexual harassment in the course of her employment. She is not seeking tort damages or any other relief that would fall outside of the jurisdiction of the WCJ in these

proceedings. As such, Ms. Adams's claim arises out of the Workers' Compensation Act, and the WCJ has subject matter jurisdiction. I see nothing in La.R.S. 23:1310.3(E) that would exclude from the jurisdiction of the WCJ a claim otherwise cognizable under the Workers' Compensation Act merely because the injury resulted from acts which could be classified as intentional.

However, the majority cites *Morris & Dickson Co. v. Killingworth*, 36,117 (La.App. 2 Cir. 10/4/02), 830 So.2d 332, *writ denied*, 03-0071 (La. 3/28/03), 840 So.2d 571, in support of its determination that any remedy to which Ms. Adams is entitled does not fall within the purview of the Workers' Compensation Act. In *Morris & Dickson Co.*, the employee initiated a charge with the Equal Employment Opportunity Commission, alleging sexual harassment and retaliation for engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964. Thereafter, the employee filed a complaint in federal district court based upon the Title VII violations. It was the *employer* in *Morris & Dickson Co.* that filed a disputed claim form with the OWC, alleging a bonafide dispute regarding the employee's injuries. The employee filed an exception of lack of subject matter jurisdiction in the workers' compensation proceedings. The second circuit found that in fact the OWC did not have subject matter jurisdiction. In so finding, the second circuit explained that "*statutory* discrimination claims are distinct and do not arise under the state workers' compensation law." *Id.* at 334 (emphasis added). In the instant case, Ms. Adams has not asserted Title VII claims against Temple Inland in these proceedings; her claim against Temple Inland is solely for workers' compensation benefits.

However, the second circuit also stated, among other things, that the employee's "sexual harassment claim [was] not within the scope of the WCA because

2

it [was] not a workplace injury arising out of the course of her employment." *Id.* Rather, the second circuit found that the employee had "allege[d] that an intentional tort was committed against her by a co-employee, a claim which is not within the purview of the state workers' compensation law." *Id.* Importantly, Ms. Adams has not alleged that an intentional tort was committed against her and has not brought a suit for damages for intentional tort against Temple Inland.

Louisiana Revised Statutes 23:1032(A)(1)(a) provides in part: "Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee . . . on account of an injury . . . shall be exclusive of all other rights, remedies, and claims for damages . . . ." This statute provides immunity to an employer from tort suits by the employee, except that for intentional acts the employer is not immune from tort suits. The tort immunity operates as an affirmative defense *in a tort action. See generally Brown v. Adair*, 02-2028 (La. 4/9/03), 846 So.2d 687. I see nothing in the statute, however, indicating that the converse is true, *i.e.*, that the employer is immune from a workers' compensation suit by the employee merely because the acts resulting in injury to the employee may be classified as intentional. "[Louisiana Revised Statutes 23:1032] is not a law evaluating conditions of legality of defendant's conduct but, rather, serves as a vehicle for asserting a substantive defense that defeats an otherwise viable claim." *Id.* at 690. In my opinion, La.R.S. 23:1032(A)(1)(a) focuses on the exclusiveness of the *rights* and *remedies* granted an employee; it does not serve to defeat jurisdiction where the acts committed by the employer or co-employee may be classified as intentional.

Ms. Adams may have chosen to avail herself of the quid pro quo benefits of the workers' compensation scheme instead of pursuing an intentional tort suit for which she would have had to bear the burden of production on the issue of fault and the

3

concomitant risk of failing in that burden. I do not find that this case falls outside of the jurisdiction of the WCJ simply because the acts giving rise to Ms. Adams's injuries may be classified as intentional.

Further, I respectfully disagree with the majority's resolution of the issue raised by Temple Inland in the proceedings below, *i.e.*, whether Ms. Adams's claim meets the definition of an "accident." As set forth by the majority, in *Partin v. Merchants & Farmers Bank*, 01-1560, pp. 12-13 (La. 3/11/02), 810 So.2d 1118, 1125, the supreme court explained:

> Under the statute, a mental injury is compensable depending upon the *type of stress* which triggers that injury. The legislative history of subsection 7(b) . . . reveals an active decision on the part of the legislature to so condition compensability in order to tighten the reigns of recovery for mental/mental claims. The desire for more difficult tests and restricted recovery indicates that the legislature intended that the nature of the stress itself be evaluated, rather than the stress being evaluated from the employee's perspective. This of course differs from the determination of whether an "event" was unexpected or unforseen under the accident requirement of subsection 1021(1), which is made by viewing the event from the employee's perspective. . . . The most likely inference is that the legislature intended to restrict recovery under subsection (7)(b) to those mental injuries that result from stresses which, by their nature, are sudden, unexpected, and extraordinary in the usual course of employment in that working environment.

(Emphasis added) (citations omitted).

In determining that, because there was not a single "event" that caused Ms. Adams's mental injury but rather "various events and occurrences of sexual harassment" that had "occurred over an extended period of time," Ms. Adams failed to prove that her mental injury was compensable, the WCJ essentially imposed upon Ms. Adams the burden of proving that the sexual harassment she experienced met the definition of "accident" as contained in La.R.S. 23:1021(1). For purposes of that subsection, an "accident" is defined in part as "an unexpected or unforeseen actual, identifiable, precipitous *event* happening suddenly or violently . . . and directly

4

producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." *Id.* (emphasis added).

Moreover, the majority cites *Sidwell v. Horseshoe Entertainment Ltd. Partnership*, 35,718 (La.App. 2 Cir. 2/27/02), 811 So.2d 229 (citing *Sparks v. Tulane Medical Center Hospital & Clinic*, 546 So.2d 138 (La.1989)), for the proposition that a mental injury caused by incidents occurring over an extended period of time is not compensable. However, *Sidwell* was decided prior to *Partin*.

I see nothing in La.R.S. 23:1021(7)(b) or in *Partin*, 810 So.2d 1118, that disqualifies a mental injury from being compensable simply because the stress from which it arose was not confined to a single event but was comprised of a series of incidents over an extended period of time. In fact, in *Partin*, 810 So.2d at 1126, the supreme court expressly rejected such an analysis, explaining that, while the court in *Sparks* had limited the compensability of mental/mental claims through the "accident" requirement, "[u]nder the new law [the current version of La.R.S. 23:1021(7)(b)], it is not necessary to limit mental/mental claims through the accident requirement [of La.R.S. 23:1021(1)]." Instead, "[t]he new law provided in subsection 1021(7)(b) supplies its own limitation by disallowing compensation for mental injuries unless they result from stress that, by its nature, is sudden, unexpected, and extraordinary in the usual course of employment in that working environment." *Id.* Importantly, the court instructed that, although a claimant must satisfy the requirement of La.R.S. 23:1031(A) that he has "receive[d] personal injury by accident arising out of and in the course of his employment," still, "the limitation on claims should now be found in subsection 1021(7)(b)." *Partin*, 810 So.2d at 1126.

Thus, I would find that the WCJ committed an error of law in requiring Ms. Adams to prove that a single event caused her mental injury. Rather, as set forth in

5

*Partin*, it is the *nature of the stress*, *i.e.*, the sexual harassment, that is to be evaluated, which requirement "differs from the determination of whether an '*event*' was unexpected or unforseen under the accident requirement of subsection 1021(1), which is made by viewing the event from the employee's perspective." *Id.* at 1125 (emphasis added).

In evaluating the nature of the stress in this case, it is clear that sexual harassment in the form of escalating comments; threats of job loss, rape, and arson; and nonconsensual, offensive touching creates stress that is certainly sudden, unexpected, and extraordinary in the usual course of employment for a utility hand. Unlike the demotion in *Partin*, the sexual harassment in this case was not merely unfair from Ms. Adams's perspective. Thus, I would reverse the WCJ's judgment and hold that Ms. Adams met the requirements of La.R.S. 23:1021(7)(b).