# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## WCA 13-534


RHONDA POWELL

VERSUS

THE OPELOUSAS HOUSING AUTHORITY


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - Number 4
PARISH OF ST. LANDRY, NO. 11-01020
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.


**AFFIRMED.**


**Gloria A. Angus**
**Angus Law Firm, LLC**
**P. O. Box 2337**
**Opelousas, LA 70571**
**(337) 948-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Rhonda Powell**

**K. Renee C. Willis**
**Johnson, Stiltner & Rahman**
**2237 S. Acadian Thruway**
**Baton Rouge, LA 70808**
**(225) 231-0875**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **The Opelousas Housing Authority**

**EZELL, Judge.**

Rhonda Powell appeals a judgment of the Office of Workers' Compensation finding that she is not entitled to benefits for a mental incident resulting in injury. For the following reasons, we affirm.

**FACTS**

Mrs. Powell was employed by the Opelousas Housing Authority (OHA) as a property manager of Development 1 in 2010. She had been employed with the OHA for twenty-nine-and-a-half years. There were two additional developments managed by two other property managers.

Mrs. Powell explained that she received her work assignments from the computer/fax when she would get to work in the mornings. The assignments were usually sent by Diane Reed, the assistant director who was in charge of the three property managers. Mrs. Powell testified that, on the morning of March 10, 2010, she received a fax with a work assignment. The assignment required her to transfer seven residents out of homes into another unit that had not been "modified". "Modification" of a unit is the preparation of the unit for occupancy by cleaning and making repairs. Mrs. Powell stated that she only had three days to complete this task. Testimony at trial, revealed that this type of task normally requires at least six days.

Mrs. Powell testified that she knew she would have to violate the law by moving the residents into unmodified units or get fired due to prior reprimands. She was previously reprimanded twice by the new executive director Jo Ann Tyler. In December 2009, Ms. Tyler wrote Mrs. Powell up because she refused to follow an order given by Ms. Tyler. In February 2010, Mrs. Powell was reprimanded for

negative comments expressed to other employees about employees and Board members.

Mrs. Powell stated she got frightened upon receiving the faxed order and asked Rose Collins, a secretarial helper in the office, to get help. Michael Reed and Willie Pickney were maintenance men that worked for the OHA. Mrs. Powell told them she was sick. Mr. Reed drove Mrs. Powell in her car to her house, and Mr. Pickney followed them in another vehicle. They dropped her off and went back to work.

When Mrs. Powell's husband got home, he noticed that Mrs. Powell did not look well and had been crying. She allegedly told him about getting the fax. Mrs. Powell complained she had a headache, so Mr. Powell called their family doctor, Dr. Theodore Deblanc, and scheduled an appointment for his wife.

Mrs. Powell saw Dr. Deblanc on March 12, 2010. At that time, Dr. Deblanc ordered Mrs. Powell not to return to work for three weeks and prescribed medications. She returned to see Dr. Deblanc on March 30, 2010, reporting three more episodes of anxiety. She also requested that Dr. Deblanc fill out a Family and Medical Leave Act form.

Through her husband's employee assistance program, Mrs. Powell was referred to a licensed clinical social worker, Patricia Lafleur. Ms. Lafleur saw Mrs. Powell on April 15, 2010. When Ms. Lafleur first saw Mrs. Powell, she was taking Paxil and Xanax. She was depressed, anxious, irritable, hallucinating, and had trouble sleeping. She was also experiencing paranoia symptoms. Ms. Lafleur testified that Mrs. Powell felt pressured at work and was concerned she was being pushed to do things that were not legal. Ms. Lafleur opined that Mrs. Powell was

2

in need of more intensive counseling, and by her third visit Mrs. Powell agreed to go to Oceans Behavioral Hospital.

Oceans provided outpatient care for a year under the care of Dr. Samir Salama, a psychiatrist. Dr. Salama testified that Mrs. Powell had a history of anxiety and depression, which had most likely increased due to a problem at work. When Mrs. Powell was discharged from Oceans, she was referred back to Ms. Lafleur for outpatient counseling. Ms. Lafleur saw Mrs. Powell four more times and observed that Mrs. Powell had learned some coping skills and was a completely different person.

In November 2010, Mrs. Powell was notified by Ms. Tyler that her sick leave was exhausted. She informed Mrs. Powell that she would be terminated unless she could return to work. Mrs. Powell responded indicating that she objected to the termination and would appeal the "adverse discriminatory, retaliatory, harassing employment practices."

On February 9, 2011, Mrs. Powell filed a disputed claim for compensation claiming that she had a nervous breakdown on March 10, 2010. Mrs. Powell claimed that Ms. Tyler refused to address the extraordinary amount of work assigned to her and that she denied her request to timely complete the tasks. She also claimed that Ms. Tyler made many threats to terminate her.

On June 8, 2011, Mrs. Powell was evaluated by Dr. Douglas de Mahy to assess her mental status regarding the presence of a potentially disabling mental/psychiatric condition in conjunction with her application for social security disability. Mrs. Powell is currently receiving social security disability benefits, and testified that she did not know she had a workers' compensation claim until

3

she saw Dr. de Mahy. However, she filed her claim on February 9, 2011, approximately four months before she was evaluated by Dr. de Mahy.

A trial on the matter was held on October 10 and 11, 2012. On November 21, 2012, the workers' compensation judge (WCJ) issued an oral ruling finding that Mrs. Powell failed to meet her burden of proof by clear and convincing evidence as required by La.R.S. 23:1021(8)(b). The WCJ then dismissed her claim against the OHA and its insurer, the Louisiana Workers' Compensation Corporation. Judgment was signed on January 7, 2013. Mrs. Powell then filed the present appeal.

## DISCUSSION

Mrs. Powell argues that the decision of the WCJ should be reversed because her testimony was uncontradicted and corroborated by witness and physician testimony in addition to the evidence introduced at trial. She argues that the facts corroborate her testimony of an injury on the job on March 10, 2010.

Workers' compensation benefits are available for a mental injury caused by mental stress when the "mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence." La.R.S. 23:1021(8)(b).

In order to recover workers' compensation benefits for a mental injury it must be triggered by an accident; "an unexpected and unforeseen event that occurs suddenly or violently." *Fontenot v. Interstate Distrib. Co.*, 09-1526, p. 5 (La.App. 3 Cir. 5/12/10), 37 So.3d 1095, 1098 (quoting *Adams v. Temple Inland, LA*, 03-187, p. 5 (La.App. 3 Cir. 11/5/03), 858 So.2d 855, 859, *writ denied*, 03-3327 (La. 2/13/04), 867 So.2d 695). "It is insufficient for the claimant to show that his

4

mental injury is 'related to general conditions of employment, or to incidents occurring over an extended period of time.'" *Id.*

The Supreme Court has held that "'the legislature intended to restrict recovery under subsection [8](b) to those mental injuries that result from stresses which, by their nature, are sudden, unexpected, and extraordinary in the usual course of employment in that working environment.'" *Manuel v. Northrop-Grumman*, 04-480, pp. 2-3 (La.App. 3 Cir. 9/29/04), 883 So.2d 502, 504 (quoting *Partin v. Merchants & Farmers Bank*, 01-1560, p. 12 (La. 3/11/02), 810 So.2d 1118, 1125).

In finding that Mrs. Powell failed to meet her burden of proving by clear and convincing evidence that she suffered a mental injury caused by mental stress, the WCJ stated: "In assessing Ms. Powell's testimony, based upon her gestures, tone of voice, responses and reactions to questions, and overall demeanor, the Court does not find Ms. Powell's testimony credible regarding the March 10, 2010 fax."

Determinations by the workers' compensation judge as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. *Lestage v. Nabors Drilling Co.*, 10-728 (La.App. 3 Cir. 12/8/10), 54 So.3d 133, *writ denied*, 11-88 (La. 2/25/11), 58 So.3d 458.

Only Mrs. Powell and Ms. Collins worked in the building together. Ms. Collins testified that Mrs. Powell told her she was sick and going home. Mr. Reed, who drove Mrs. Powell home, testified that Mrs. Powell did not tell him that anything had happened at work. She only told him that she was sick. Neither Ms. Collins nor Mr. Reed knew anything about a fax.

5

Ms. Tyler confirmed that Mr. Reed reported that he drove Mrs. Powell home because she was sick. Later she received notification that Mrs. Powell was under the care of a doctor and would be out for some time. She never received any notification that her illness was work-related. It was not until she received the workers' compensation notice that Ms. Tyler became aware that Mrs. Powell was claiming a work-related illness. Ms. Tyler testified that she did not send Mrs. Powell a fax on March 10, 2010. She stated that she was not aware of any fax sent to Mrs. Powell notifying her that she had a certain number of days to perform a task.

The disputed claim for compensation makes no mention of a fax. It only asserts that claimant had a nervous breakdown because Ms. Tyler refused to address the extraordinary amount of work assigned to Mrs. Powell and refused her request for an assistant to help timely complete the tasks. The claim form also stated that Ms. Tyler made many threats to terminate Mrs. Powell.

Ms. Tyler testified that it takes six to fourteen days to modify a unit for occupancy. She agreed that you could not move a tenant into a unit that is not ready for occupancy as it is against HUD's rules and regulations. She further acknowledged that it is almost impossible to move a tenant in three days unless the unit is in good shape when the tenant moves out.

Ms. Tyler testified that she was not aware of any extra work or deadlines placed on Mrs. Powell around March 10, 2010. She had the same responsibilities and was treated the same as the property managers of Development 2 and Development 3.

The Powells testified that Mrs. Powell had only had an anxiety attack one other time, when they were building a house in 2001. Mr. Powell testified that his

wife was prescribed Paxil at that time and may have taken it for two to three years. However, Dr. Deblanc's medical records indicate that Mrs. Powell continued to receive treatment for depression and anxiety throughout the years. In June of 2005, Mrs. Powell was continuing to be prescribed Paxil. In October of 2005, she reported that she was "under a great deal of work stress." She was prescribed Paxil in May 2006. Valium was prescribed for her in May 2006. In December 2006, Mrs. Powell reported depression. Again, Paxil continued to be prescribed in February 2007. Mrs. Powell requested a refill of Paxil in October 2007. In 2009, Mrs. Powell was prescribed Paroxetine. She reported being stressed a lot.

Dr. Deblanc's progress notes indicate that when he first examined Mrs. Powell in March 2010 that she was having panic attacks more often than normal, had to put her head between her legs to calm down, and was stressed out. Later, she reported three more anxiety attacks. No mention is made of a fax.

Ms. Lafleur reported that Mrs. Powell was reprimanded in February which caused her anxiety issues. Ms. Lafleur testified that it was her understanding Mrs. Powell broke down at work on March 10, 2010, and had to be taken home. Ms. Lafleur testified that Mrs. Powell felt pressured and that the agency was biased and unfair. Ms. Lafleur did not indicate that Mrs. Powell had received a fax.

Dr. Samir testified that Mrs. Powell had a history of depression which was intensified by stressors with her employer that happened prior to her admission at Oceans.

Dr. de Mahy, the social security doctor, noted that Mrs. Powell reported she had a breakdown at work and "complained that the heavy workload and the demanding attitude of her supervisor resulted in a subsequent hospitalization [in] an intensive outpatient therapy." She related that her breakdown occurred at work

7

in March 2010. She related that she was "concerned about her ability to deal with normal work demands particularly working under a demanding and aggressive supervisor." She also reported that "she harbors intense resentment for her former supervisor and the way she was treated." Mrs. Powell was "concerned that she will be overly sensitive and misinterpret normal supervisory expectations as demanding."

Mr. Powell testified that when he got home, Mrs. Powell told him that she had received a fax from the main office about transferring tenants into units that were not available. Mrs. Powell agreed that she showed the fax to her husband but did not have a copy of it for trial. She testified that she did not know if she destroyed it or if it was in a binder at her home.

Based on the above testimony and evidence, we find that the WCJ's decision is reasonably supported by the record. The only people who stated anything about Mrs. Powell getting a fax were her and her husband. The fax itself was never introduced into evidence. Furthermore, the record establishes that Mrs. Powell had a history of depression and anxiety attacks years before March 10, 2010. It is obvious that Mrs. Powell was adjusting to working with a new director. The record as a whole indicates that Mrs. Powell was continuing to feel pressured at work which resulted in a breakdown on March 10, 2010. We find no manifest error in the WCJ's decision that there was no sudden and unforeseen event on March 10.

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs are assessed to Rhonda Powell.

**AFFIRMED.**

8