STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1593

CHARLES B. BRIDGES, ET UX.

VERSUS

THE CITY OF CARENCO, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005-2818
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Michael J. Remondet Jr.
Donovan O'Pry
Jeansonne & Remondet
P. O. Box 91530
Lafayette, LA 70501
Counsel for Defendant-Appellee:
    United States Speciality Sports Association (USSSA)

B. Trey Morris
Klotz, Simmons & Brainard
509 Milam St.
Shreveport, LA 71101-3523
Counsel for Plaintiffs/Appellants:
    Charles B. Bridges & Cynthia Bridges

**Pickett, J.**

The plaintiffs, Charles and Cynthia Bridges, appeal a judgment of the trial court granting a motion for summary judgment filed by the defendant, United States Speciality Sports Association (USSSA) dismissing USSSA from the plaintiffs' suit for damages resulting from injuries Mr. Bridges sustained during a softball game. We affirm the judgment of the trial court.

### FACTS

The plaintiff, Charles Bridges, was injured on June 5, 2004, while participating in a softball tournament at Pelican Park in Carencro. The tournament was sponsored by the defendant, USSSA. The team of which Bridges was a member played a game Saturday morning, a second game on Saturday afternoon, and its third game at approximately 9:00 p.m. Saturday evening. Between the afternoon and night games it started to rain. Bridges stated that when he arrived at the field for the night game he noticed the infield, which was carpeted with an "Astroturf" type material, was in poor condition because of several hours of rain; however, he decided to play anyway. Bridges played shortstop. The softball game consisted of seven innings. In the fifth or sixth inning, Bridges was covering second base in an attempt to tag out a runner coming from first base. The areas around each base had no turf covering, but rather, had the dirt infield exposed. In attempting to take second base, the runner either slipped or slid in the dirt around second base causing a collision between the runner and the plaintiff. As a result of the collision, the plaintiff sustained a broken lower leg. This suit followed.

### LAW AND DISCUSSION

The law applicable to summary judgments and to the appellate review thereof is well settled:

2

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); *Yarbrough v. Federal Land Bank of Jackson*, 31,815 (La.App.2d Cir. 03/31/99), 731 So.2d 482. *The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.* La. C.C.P. art. 966(B); *Leckie v. Auger Timber Co.*, 30,103 (La.App.2d Cir. 01/21/98), 707 So.2d 459. The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. *See*, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.

Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Kennedy v. Holder*, 33,346 (La.App.2d Cir. 05/10/00), 760 So.2d 587.

*Semien v. EADS Aeroframe Servs., LLC*, 04-760, pp. 1-2 (La.App. 3 Cir. 2/2/05), 893 So.2d 215, 216-17 (quoting *Sidwell v. Horseshoe Entm't Ltd. P'ship*, 35,718, pp. 2-4 (La.App. 2 Cir. 2/27/02), 811 So.2d 229, 230-31) (first emphasis added).

*Olson v. Rapides Parish Sheriff*, 07-57, pp. 2-3(La.App. 3 Cir. 5/2/07), 957 So.2d 282, 284.

3

The plaintiff filed a petition for damages against both USSSA and the City of Carencro, alleging that the condition of the field around second base was the cause of his injuries and that because of the defective condition, the game should have been postponed. The only defendant before us is USSSA. The plaintiffs argue that it was the responsibility of the USSSA Tournament Manager, Marie Duplechin, to postpone the game due to the poor field conditions, and that her failure to do so resulted in the plaintiffs' injuries.

The action at issue in this case, is a motion for summary judgment filed by USSSA, who claims immunity under the provisions of La.R.S. 9:2798, which provides in part:

> **Limitation of liability of a volunteer athletic coach, manager, team volunteer health care provider, or official; definitions**
>
> A. Except as provided in Subsection B of this Section, no person shall have a cause of action against any volunteer athletic coach, manager, athletic trainer, team volunteer health care provider, or sports team official for any loss or damage caused by any act or omission to act directly related to his responsibilities as a coach, manager, athletic trainer, team volunteer health care provider, or official, while actively conducting, directing, or participating in the sporting activities or in the practice thereof, unless the loss or damage was caused by the gross negligence of the coach, manager, athletic trainer, team volunteer health care provider, or official.

This case is directly on point with an unpublished opinion of this court, 06-168 c/w 06-1384, *Perry v. United States Speciality Sports Assoc., et al.* (La.App. 3 Cir. 3/7/07). In *Perry* at p.1 the court listed the following as one of the issues to be decided: "Did the trial court err in granting USSSA's motion for summary judgment, finding that La.R.S. 9:2798 applied, . . . . making USSSA immune from liability?" The *Perry* case arose out of circumstances very similar to the case at bar. Perry noticed a defect in the playing surface which he believed might be dangerous. He

4

reported the defect to the USSSA umpire who relayed Mr. Perry's complaint to a USSSA director. The umpire returned stating that there was nothing that USSSA could do to fix the defect and that Perry and his team would either have to play the game on the field, as it was, or forfeit the game. Perry decided to play the game on the field in the condition in which he found it. In the third inning, while attempting to avoid a line drive, Perry caught the heel of his left foot under one of the holes in the infield carpeting preventing him from avoiding the batted ball and causing him to sustain injuries.

The plaintiff in the suit sub judice claims excessive rain soaked the field making the areas around the bases unsafe; whereas Perry made his claim based upon holes in the turf. The plaintiffs in both suits argued that the alleged unsafe conditions were reported to officials, but that the games progressed anyway. The facts in both suits raise the same questions.

In *Perry*, this court found the following:

USSSA submitted that Mr. Perry's claim against it would fail because its umpires and directors were immune from liability per the Louisiana Recreational Immunity Statutes. In particular, this claim of immunity is based on La.R.S. 9:2798, which states in pertinent part:

§ 2798. Limitation of liability of a volunteer athletic coach, manager, team volunteer health care provider, or official; definitions

A. Except as provided in Subsection B of this Section, no person shall have a cause of action against any volunteer athletic coach, manager, athletic trainer, team volunteer health care provider, or sports team official for any loss or damage caused by any act or omission to act directly related to his responsibilities as a coach, manager, athletic trainer, team volunteer health care provider, or official, while actively conducting, directing, or participating in the sporting activities or in the practice thereof, unless the loss or damage was caused by the gross

5

negligence of the coach, manager, athletic trainer, team volunteer health care provider, or official.

. . . .

C. The receipt of a small stipend or incidental compensation for volunteer services shall not exclude any individual or person, who is otherwise covered, from the limitation of liability provided in Subsection A of this Section.

La.R.S. 9:2798(A) & (C).

USSSA submitted evidence proving that the umpire to whom Mr. Perry first pointed out the alleged defect in the pitcher's mound was a volunteer for USSSA. USSSA did admit that its umpires are paid a stipend of fifteen dollars per game, and submitted evidence of this stipend. The tournament directors also receive a stipend of ten dollars for each team entered in the tournament. USSSA asserted, and Mr. Perry agreed, that these payments are not enough to support a person and therefore could not be considered a salary. These payments meet the definition of "incidental compensation" under La.R.S. 9:2798(C). Therefore, La.R.S. 9:2798 applies, and USSSA's umpire and director are not liable for any injury Mr. Perry sustained.

The burden then shifts back to Mr. Perry to show that he could produce evidence proving that the umpire and director were not immune from liability. Mr. Perry produced no evidence, nor did he even argue that any such evidence might be produced at trial, to show that the umpire and director did not meet the elements required to take advantage of the immunity offered by La.R.S. 9:2798. He merely restated the arguments he made in his initial pleadings. That is insufficient to meet his burden of proving that he could produce factual support sufficient to establish that he could meet his evidentiary burden at trial.

Since USSSA met its burden of proving that its umpire and director were immune from liability as per La.R.S. 9:2798, and because Mr. Perry could not meet his burden to produce factual support to the contrary, the trial court correctly granted USSSA's motion for summary judgment based also on immunity from liability under La.R.S. 9:2798.

*Perry*, 06-168 at 6-8.

In the case at bar, Ms. Duplechin, the tournament director, submitted an affidavit establishing that she was a volunteer (under the terms of La.R.S. 9:2798).

6

The plaintiffs argue that since "tournament director" is not one of the positions specifically listed in La.R.S. 9:2798, that she does not qualify for immunity under the statute. We agree that "tournament director" is not specifically listed, *however*, the statute does include "*official[s]," i.e.*,

> A. Except as provided in Subsection B of this Section, no person shall have a cause of action against any volunteer athletic coach, manager, team volunteer health care provider, or sports team *official* . . . . unless the loss or damage was caused by the gross negligence of the coach, manager, athletic trainer, team volunteer health care provider, or *official*." (Emphasis ours).

Just as we found umpires were covered by the statue in the *Perry* case, we find tournament directors to be covered in this case.

Finally, the plaintiffs argue that their allegation of "gross negligence" should preclude the granting of a summary judgment. The record establishes that after the rain, remedial steps were take to improve the playing surface. In its answers to interrogatories the City of Carencro and Pelican Park, Inc. stated that the later "games were delayed approximately 30 to 60 minutes to give maintenance workers time to prepare the field for playing." The answers specifically state: "[t]he water was swept off and then turface/quick dry was spread over the dirt area and raked." The plaintiffs brought forth no deposition or affidavit which counter the defendants' claims of remedial action nor raise an issue of material fact regarding alleged gross negligence on the part of the defendants.

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiffs, Charles and Cynthia Bridges.

**AFFIRMED.**

7